## ARMOUR & COMPANY v. COMMONWEALTH OF VIRGINIA.

### ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 127. Argued January 3, 1918.—Decided March 4, 1918.

A law of Virginia (Acts 1915, c. 148, p. 233) imposes a license tax on merchants doing business in the State based on the amount of purchases during the license period, including as purchases all goods, wares and merchandise manufactured by the licensee and sold or offered for sale in the State; but excludes from its operation manufacturers taxed on capital by the State, who offer for sale at the place of manufacture the goods, wares and merchandise manufactured by them. The Court of Appeals of the State having interpreted this exclusion as open to all, including non-citizens and non-residents, who manufacture in Virginia, and the license as extending as well to those who manufacture in Virginia and sell the goods at places other than the place of manufacture, as to those who manufacture without and sell within the State. *Held*; that the license tax, as applied to a New Jersey corporation, and as computed on the basis of merchandise manufactured by it in other States and shipped into Virginia for sale at its agencies there, does not offend the equal protection clause of the Fourteenth Amendment, or abridge the privileges and immunities of the corporation guaranteed

(1)

by that Amendment and by Art. IV of the Constitution, or constitute, either inherently or by necessary operation and effect, an unconstitutional burden on interstate commerce.
118 Virginia, 242, affirmed.

THE case is stated in the opinion.

*Mr. Eppa Hunton, Jr.*, with whom *Mr. H. T. Hall* was on the briefs, for plaintiff in error:

It is not denied that under the construction placed upon this statute by the Supreme Court of Appeals of Virginia there is no discrimination against manufacturers because they do not have their residence in the State; but it is maintained that there is a discrimination against goods which are not manufactured in Virginia, in favor of goods which are manufactured therein, in this, that where goods are manufactured there the manufacturer may sell them at the place at which they are manufactured without any merchant's license tax for so doing; and that it is a matter of common knowledge that the greater part of manufactured goods are thus sold.

The result of this legislation is that a resident manufacturer, being taxed on his capital in Virginia, has the right to sell, and does sell, the great bulk of his manufactured products without paying any merchant's license therefor, whereas the manufacturer who undertakes to sell goods not manufactured in Virginia, must pay the merchant's license tax on all such sales. That this discrimination is unconstitutional, see *Commonwealth* v. *Myer*, 92 Virginia, 809; *Woodruff* v. *Parham*, 8 Wall. 123; *Hinson* v. *Lott*, 8 Wall. 148; *Ward* v. *Maryland*, 12 Wall. 418; *Welton* v. *Missouri*, 91 U. S. 275; *Guy* v. *Baltimore*, 100 U. S. 434; *Webber* v. *Virginia*, 103 U. S. 344; *Walling* v. *Michigan*, 116 U. S. 446. See especially *Brimmer* v. *Rebman*, 138 U. S. 78. This case holds that the constitutionality of a statute is not determined by the fact that it applies to residents as well as non-residents, but by its practical

operation, although there may be no purpose upon the part of the legislature to violate the provisions of the Constitution. *Darnell & Son* v. *Memphis*, 208 U. S. 113. Distinguished *New York* v. *Roberts*, 171 U. S. 658; *Plummer* v. *Coler*, 178 U. S. 115; and *Reymann Brewing Co.* v. *Brister*, 179 U. S. 445.

*Mr. J. D. Hank, Jr.*, Assistant Attorney General of the State of Virginia, with whom *Mr. Jno. Garland Pollard*, Attorney General of the State of Virginia, and *Mr. Leon M. Bazile* were on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This suit concerns § 45 of the Virginia general taxing statute, as amended in 1915, which is in the margin.[1] It will be observed that the section imposes an annual license tax upon all persons or corporations carrying on a

---

[1] "Every person, firm, company or corporation engaged in the business of a merchant shall pay a license tax for the privilege of doing business in this State to be graduated by the amount of purchases made by him during the period for which the license is granted, and all goods, wares and merchandise manufactured by such merchant and sold or offered for sale, in this State, as merchandise, shall be considered as purchases within the meaning of this section; provided, that this section shall not be construed as applying to manufacturers taxed on capital by this State, who offer for sale at the place of manufacture, goods, wares and merchandise manufactured by them. To ascertain the amount of purchases it shall be the duty of such merchant, on the first day of April of each year, or within ten days thereafter, to make report in writing, under oath, to the commissioner of the revenue, for the district for which he was licensed, showing purchases as above defined, and also all goods, wares and merchandise manufactured and sold or offered for sale in this State during the next preceding twelve months; except such goods, wares and merchandise as is manufactured by persons, firms and corporations taxed on their capital by this State. . . ." Acts of 1915, c. 148, p. 233; Virginia Code, vol. 4, p. 594.

merchandise business at any place in the State, the amount being determined by the sum of the purchases during the year. It will be further seen that the amount of the purchases includes "all goods, wares and merchandise manufactured by such merchant and sold or offered for sale, in this State, as merchandise," and that the section also contains a provision excluding from the operation of the license "manufacturers taxed on capital by this State, who offer for sale at the place of manufacture, goods, wares and merchandise manufactured by them."

Armour & Company, a New Jersey corporation engaged in the packing house business, and having various establishments in several States, carried on in Virginia the merchandise business of selling packing house products at the respective agencies which they had established. For the purposes of the merchant's license in question the company was called upon to return the sum of its purchases, including the amount shipped into the State for sale at its agencies, whether or not manufactured by it. The corporation declined to comply and commenced this suit to enjoin the enforcement of the statute in so far as it required the inclusion in the amount of purchases of merchandise manufactured by the corporation in other States and shipped into Virginia for sale. It was charged that to the extent stated the statute was in conflict with the Constitution of the United States because of the provision excluding from liability for license persons who manufactured merchandise in Virginia and sold the same at the place of manufacture for the following reasons: (a) Because as the result of such exclusion the statute discriminated against the company to the extent that it shipped goods manufactured by it into Virginia to be sold and therefore was a direct burden on interstate commerce. (b) Because the statute deprived manufacturers in other States of the benefit of § 2 of Article IV guaranteeing to the citizens of each State "all privileges and immunities

of citizens in the several States." And (c) because the statute in the respects stated was repugnant to the equal protection and privilege and immunities clauses of the Fourteenth Amendment.

The trial court enjoined the enforcement of the statute to the extent complained of and its action on appeal was reversed by the court below. It was held that the statute was inherently within the state legislative power and that the difference between a manufacturer selling goods by him made at the place where they were manufactured and one engaged in a mercantile business even if his business consisted in whole or in part of the selling of goods by him manufactured at a place other than the place of manufacture was such as to afford adequate ground for their distinct classification and hence justified the provision of the statute including one in the merchant's license and excluding the other. In addition, construing the statute, it was decided that it was not discriminatory since the exclusion from the license tax of manufacturers selling at their place of manufacture was open to all whether non-citizens or even non-residents who manufactured in Virginia and because the liability for the merchant's license embraced even those who manufactured in Virginia if they sold as merchants the goods by them manufactured at a place other than the place of manufacture. From this latter conclusion it was decided that if any disadvantage resulted to the person selling as a merchant in Virginia goods manufactured by him in another State by subjecting him to a license when such license did not include the manufacturer selling in Virginia at the place of manufacture, the disadvantage was a mere indirect consequence of a lawful and non-discriminatory exercise of state authority and afforded no basis for holding the statute to be repugnant to the clauses of the Constitution of the United States as contended. 118 Virginia, 242.

All the constitutional grounds which were thus held

to be without merit are within the errors assigned and relied upon although predominance in argument is given to the asserted repugnancy of the statute to the commerce clause of the Constitution; and we come briefly to consider them all.

In the first place, we are of opinion that the distinction upon which the classification in the statute rests between a manufacturer selling goods by him made at their place of manufacture and one engaged as a merchant in whole or in part in selling goods of his manufacture at a place of business other than where they were made is so obvious as to require nothing but a mere statement of the two classes. All question concerning the equal protection clause of the Fourteenth Amendment may therefore be put out of view.

In the second place, we are also of opinion that the interpretation given by the court below to the statute excludes all basis for the contention that the provision of the statute imposing the license tax upon the one class and not upon the other gave rise to such discrimination as resulted in a direct burden upon interstate commerce. And this whether the statute be considered from the point of view of the power of the State to enact it inherently considered, or of the power as tested by the necessary operation and effect of the statute, if any, upon interstate commerce and the plenary and exclusive power of Congress to regulate the same.

In the third place, we also conclude that, as the subject matter of the statute was plainly within the legislative authority of the State and as the previous conclusions exclude the conception of the repugnancy of the statute to the provisions of the Constitution just considered, it necessarily follows that there is no ground for the assertion that the statute conflicted with the privileges and immunities clause of Article IV of the Constitution or of the clause in the Fourteenth Amendment providing that,

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

But, it is urged, the statute should be held to be a burden on interstate commerce and repugnant to the Constitution because of the disadvantage to which, it is insisted, it necessarily by way of a license tax subjected goods manufactured in another State when sold in Virginia by a merchant manufacturing the same, while no such tax was by the statute imposed on a manufacturer in Virginia selling his goods so manufactured at the place of their manufacture. But we have already tested the statute by its necessary operation and effect and found it not to be repugnant to the commerce clause. Hence this argument but repeats in a different form a contention already disposed of. It follows therefore that, if the asserted disadvantage be real and not imaginary, it would be one not direct because not arising from the operation and effect of the statute, but indirect as a mere consequence of the situation of the persons and property affected and of the non-discriminating exercise by the State of power which it had a right to exert without violating the Constitution—which is indeed but to say that the disadvantage relied upon, if any, is but the indirect result of our dual system of government.

In other words, to resume, the error of the argument results from confounding the direct burden necessarily arising from a statute which is unconstitutional because it exercises a power concerning interstate commerce not possessed or because of the unlawful discriminations which its provisions express or by operation necessarily bring about and the indirect and wholly negligible influence on interstate commerce, even if in some aspects detrimental, arising from a statute which there was power to enact and in which there was an absence of all discrimination, whether express or implied as the result of the

necessary operation and effect of its provisions. The distinction between the two has been enforced from the beginning as vital to the perpetuation of our constitutional system. Indeed, as correctly pointed out by the court below, that principle as applied in adjudged cases is here directly applicable and authoritatively controlling. *New York* v. *Roberts*, 171 U. S. 658; *Reymann Brewing Co.* v. *Brister*, 179 U. S. 445. In saying this we have not overlooked or failed to consider the many cases cited in the argument at bar on the theory that they are to the contrary, when in fact they all rest upon the conclusion that a direct burden on interstate commerce arose from statutes inherently void for want of power or if within the power possessed were intrinsically repugnant to the commerce clause because of discriminations against interstate commerce which they contained.

*Affirmed.*