# Wytheville

RICHMOND LINEN SUPPLY COMPANY v. CITY OF LYNCHBURG.

June 15, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Strode & Edmunds,* for the plaintiff in error.

*T. G. Hobbs* and *S. V. Kemp,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This case deals with the constitutionality of an ordinance of the city of Lynchburg under which a license tax is assessed against certain laundries.

The National Linen Service Corporation is a non-resident, domiciled in Virginia, and operates a branch in Richmond under the trade name of Richmond Linen Supply Company. From there business is carried to a number of Virginia cities. This consists in renting towels and linen to hotels,

coats to barbers, dresses to waitresses and like supplies to all customers whom it can secure. They are delivered from Richmond, used until soiled, collected, laundered and re-delivered.

In November, 1931, it applied for a license to do business in Lynchburg, and obtained it under a then existing ordinance which reads:

"86½. Towel Service. On every person, firm or corporation engaged in towel service or the renting or furnishing of towels for compensation, $25.00 per annum."

Almost immediately it appeared that this towel service license did not cover petitioner's business, which went far beyond the renting of towels. It was amended by the addition of this further provision:

"On every person, firm or corporation (other than a laundry or dry cleaning establishment located in the city of Lynchburg, paying regular laundry or dry cleaning license tax in the city of Lynchburg) engaged in soliciting general laundry or dry cleaning work, including towel or laundry service, or the renting or furnishing of towels and linens for compensation, where said person, firm or corporation does the laundry or dry cleaning work thereon outside of the city, or has it done outside of the city, $300.00 per annum not prorated."

This ordinance was enacted under authority of section 48 of the city charter, which reads:

"The council may impose a tax on merchants, commission merchants, * * * and any other person, firm, corporation or employment, whether of like kind with any of the foregoing or not, which it may deem proper, whether such person, firm, corporation or employment be herein specifically enumerated or not, and whether any tax be imposed thereon by the State or not. As to all such persons, firms, corporations or employments, the council may lay a direct tax or may require a license tax therefor under such regulations as it may prescribe and levy a tax thereon; and where it is not

prohibited by the laws of this State, or of the United States, may levy both a direct tax and a license tax thereon; * * *."

This license tax which the petitioner paid under protest it now seeks to recover.

It is said that the tax ordinance deprives it of property without due process of law, and denies to it equal protection of the laws; that it is against public policy and is arbitrary as to classification. In support thereof we are cited to sections 1 and 11 of Virginia's Bill of Rights, and to the Fourteenth Amendment to the Federal Constitution. Simply stated, petitioner contends that the point at which it washes its own linen is unimportant, and that a classification which seeks to make a distinction between laundries located in Lynchburg and those located elsewhere, so far as it affects petitioner, is wholly arbitrary. Of course, one may wash his linen at will without let or hindrance as to time and place. The city is not undertaking to tax a laundry, but to assess a license for uses to which its products are put when brought within its corporate limits.

Certain rules of construction are so fundamental that we hesitate to restate them. Statutes are not to be held unconstitutional unless we are driven to that conclusion. *City of Norfolk* v. *Bell*, 149 Va. 772, 141 S. E. 844; *Anthony* v. *Commonwealth*, 142 Va. 577, 128 S. E. 633.

The legislature, for the purpose of taxation, may classify property.

*State Board of Tax Commissioners of Indiana* v. *Jackson*, 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464, is a case in which a license tax on chain stores was involved. The court said: "The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations."

And further: "It is not the function of this court, in cases like the present, to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature, if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the court make this abundantly clear."

See, also, *Bradley* v. *Richmond*, 110 Va. 521, 66 S. E. 872, affirmed 227 U. S. 477, 33 S. Ct. 318, 57 L. Ed. 603.

Chain store taxes came again before the Supreme Court of the United States in *Louis K. Liggett Co.* v. *Lee* (U. S.) 53 S. Ct. 481, 484, 77 L. Ed. —. A Florida statute there dealt with was held to be unconstitutional because of distinctions made, based upon the number of stores which chanced to be located in some particular county, as distinguished from those operated in the State generally. The court, however, in the course of its opinion said: "The difference between the subjects taxed need not be great. * * * If any reasonable distinction can be found, the duty of the court is to sustain the classification embodied in the law." And that, "the legislature may make the difference in method and character of the business the basis of classification for taxation."

In *Travelers' Insurance Co.* v. *Connecticut*, 185 U. S. 364, 22 S. Ct. 673, 676, 46 L. Ed. 949, it was said: "This court has frequently held that mere inequality in the result of a State tax law is not sufficient to invalidate it;" and that perfect equality is a dream unrealized. This is particularly true as to license taxes. *Bradley* v. *Richmond, supra.* Nor is it necessary that the same transactions be themselves always subject to the same tax.

In *Commonwealth* v. *Armour & Co.*, 118 Va. 242, 87 S. E. 610, affirmed 246 U. S. 1, 38 S. Ct. 267, 62 L. Ed. 547, it was held that "section 45 of the tax bill of 1915 (Acts 1915, page 233), which allows a manufacturer to sell his products

at the place of manufacture, without taking out a merchant's license, but requires a merchant's license tax regulated according to purchases to be taken out by every manufacturer, resident and nonresident, who sells goods, wares and merchandise at a fixed place apart from the place of manufacture, and to return as purchases not only goods bought from others, but also goods manufactured by him and offered for sale at his storehouse, separate and apart from the place of manufacture, does not unjustly discriminate against the foreign manufacturer, nor deny to him the equal protection of the law, nor attempt to regulate commerce between the States, but is a valid enactment." Syllabus, Note 1. That is to say, in this case Armour & Company were not required to pay any license tax for sales made at its place of business, although its competitors, before they could make exactly the same sales, would have to pay such a tax—this because it was taxed in other ways—and that is the situation in the instant case. Local laundries did not have to pay the license tax assessed against non-residents, although they did in fact pay another license tax and other taxes. The city manager tells us what they are. Their license tax is $100; in addition, "they pay heavy property tax—tax as a going concern—in addition to their license tax; taxes on machinery; they employ hundreds of people, who in turn have homes here and in turn support and pay taxes thereon; they use thousands of dollars worth of water—most business places in the city do—and the water plant is a city-owned utility; * * *."

We have seen that courts are extremely reluctant to declare laws unconstitutional; that classifications are to be sustained whenever there is any fair basis for them; that equality in taxation, particularly where licenses are concerned, is a dream unrealized, and that differences in methods may be in itself a basis for classification. Local laundries do pay a license tax, though it is smaller in amount, but they are otherwise taxed directly and indirectly in ways which petitioner wholly escapes. They in turn

might complain if they had to pay for their incidental linen service the same tax assessed against a non-resident, whose sole business it was, and have at the same time to pay property and water taxes not leviable against their competitors.

In these circumstances, it cannot be said that this classification is arbitrary or unsupported by reason.

It is further contended that this ordinance is against public policy in that it restricts competition. Experience has shown that these nationwide corporations sometimes destroy the business of local competitors, and in many communities are conduits rather than reservoirs of capital. This seems to be the basis of chain store legislation. Its wisdom is not for the courts. Those underlying principles which have brought it about apply in the instant case. Public policy is with the city.

Another reason, not stressed, is entitled to some weight. Plainly laundries should be supervised. Linen not sterilized is a convenient carrier of contagions. But it is not necessary to invoke police power in this case. It turns upon classification, and is affirmed.

*Affirmed.*

EPES, J., dissenting.