[L. A. No. 14753.   In Bank.—February 27, 1937.]

FRED T. BUENEMAN et al., Appellants, v. CITY OF SANTA BARBARA (a Municipal Corporation) et al., Respondents.

Burnett Wolfson and Earl I Swetow for Appellants.

J. W. Henderson and Henderson, Henderson & Carey, *Amici Curiae* on Behalf of Appellants.

J. F. Goux, City Attorney, and Maxwell Nichols, City Attorney, for Respondents.

Harold P. Huls, City Attorney of Pasadena, Leroy A. Garrett, Deputy City Attorney of Pasadena, Ray L. Chesebro, City Attorney of Los Angeles, Leon T. David, Assistant City Attorney of Los Angeles, and Louis Burke, City Attorney of Montebello, *Amici Curiae* on Behalf of Respondents.

EDMONDS, J.—This appeal presents for decision the constitutionality of an ordinance of the City of Santa Barbara which imposes a license fee upon every person who engages in the laundry business in that city where the actual work is not done therein. The demurrer of the respondents was sustained and plaintiffs were denied leave to amend their complaint. The question to be determined, therefore, is whether the appellants' complaint states a cause of action.

The complaint alleges that for a long time prior to August, 1933, and subsequent thereto, the plaintiffs have been engaged in the general laundry, towel and linen supply business, some of which was transacted in the City of Santa Barbara. However, it is alleged that appellants do not maintain or have a fixed place of business in that city, nor do they do any of the laundry work therein.

The complaint further alleges that the respondent city adopted an ordinance which became effective in August, 1933, imposing a license fee of $200 per year for revenue and not for any other purpose upon "every person in the City of Santa Barbara who conducts or carries on or engages in the business of, or solicits orders for or accepts orders for, or maintains a regular delivery or distribution system for customary or usual delivery to and from regular customers as such of a laundry or a towel or linen supply service or a dry cleaning service, or any one or more of said three classes of business, where the plant or establishment used for the actual work of laundering or dry cleaning, or of both where both laundry and dry cleaning services are involved, is not maintained within said City of Santa Barbara at a fixed and regular place of business within said City". It also alleges that no tax is imposed upon any person conducting a like

business where the plant or establishment is maintained within the city; that by another section of the ordinance the carrying on of business by one whose plant is outside the city limits without payment of the license fee is made a misdemeanor, and that every day or part thereof on which he carries on the business he is guilty of a separate offense, punishable by not exceeding $300 fine or 90 days in jail, or by both fine and imprisonment. It appears from the complaint that plaintiffs have refused to pay the tax and secure the license provided for in the ordinance for the reason that they believe it to be unconstitutional and void; that respondents have arrested and threaten to continue to arrest appellants' employees; that such arrests and threats have interfered with their business and will continue to hamper and hinder their business, and that unless the respondents are restrained from enforcing the ordinance appellants will suffer irreparable damage. Appellants charge that the ordinance violates the Fourteenth Article of the Amendments to the Constitution of the United States, and also sections 13 and 21 of article I of the Constitution of California, in that it denies to appellants the equal protection of the laws and grants privileges and immunities to one class of citizens which are not accorded to all citizens similarly situated.

Only two points are presented for consideration: first, whether an action may be maintained to restrain the enforcement of a license ordinance; and, second, whether this ordinance falls within the constitutional inhibitions.

Concerning the first point, while "an injunction cannot be granted to prevent the execution of a public statute by officers of the law for the public benefit" (sec. 526, subd. 4, Code Civ. Proc., sec. 3423, subd. 4, Civ. Code), it has been uniformly held that this provision does not apply to an unconstitutional statute or ordinance. "A suit for injunction in behalf of one specially interested, to prevent the attempted execution of a void statute and the exercise of an office claimed to have been created thereby, but in fact and in law nonexistent, is a proper remedy to obtain the relief required." (*Wheeler* v. *Herbert,* 152 Cal. 224, 228 [92 Pac. 353].) In the more recent case of *Jones* v. *City of Los Angeles,* 211 Cal. 304, 306 [295 Pac. 14], the court said: "It is settled that where a penal statute causes irreparable damage to property rights, the injured party may attack its constitutionality by an action to enjoin its enforcement. Hence, if the ordinance

is unconstitutional in its application to these plaintiffs, they are entitled to the decree which they seek.'' The same conclusion is reached in other cases. (*Bramman* v. *City of Alameda*, 162 Cal. 648 [124 Pac. 243]; *Abbey Land & Imp. Co.* v. *County of San Mateo*, 167 Cal. 434 [139 Pac. 1068, Ann. Cas. 1915C, 804, 52 L. R. A. (N. S.) 408]; *E. A. Hoffman Candy Co., Inc.*, v. *Newport Beach*, 120 Cal. App. 525 [8 Pac. (2d) 235]; *City of Danville* v. *Quaker Maid, Inc.*, 211 Ky. 677 [278 S. W. 98, 43 A. L. R. 590]; *Thompson* v. *Smith*, 155 Va. 367 [154 S. E. 579, 71 A. L. R. 604].)

Also, while ordinarily equity will not enjoin a criminal prosecution, yet where persons have been arrested and further arrests and prosecutions are threatened under a void municipal ordinance, the enforcement of which seriously interferes with property rights, it will entertain a suit brought to test the validity of the enactment. (*Carey* v. *Atlanta*, 143 Ga. 192 [84 S. E. 456, L. R. A. 1915D, 684, Ann. Cas. 1916E, 1151].) The complaint clearly shows that the business of plaintiffs, which is a perfectly lawful one, is being interfered with by the steps which have already been taken to enforce the ordinance. Plaintiffs under the circumstances shown must either comply with the terms of the ordinance or defend each person who is arrested for a violation of it. In such a situation a court of equity will entertain the suit.

The second question is the principal point of controversy. With the great improvement in means of transportation, business which was formerly conducted entirely within the limits of a city now spreads over a territory limited only by the cost of economical distribution and without regard to the boundary lines of political subdivisions. The desire of the legislative body of a city to keep the business of its residents for those who maintain stores, factories or other business establishments within its boundary is a natural one. At least efforts to protect the merchants of a city from outside competition commenced in California as early as 1877. In the case of *Ex parte Frank,* 52 Cal. 606 [28 Am. Rep. 640], an ordinance of the city of San Francisco was considered. By that ordinance a merchant whose goods were located within the city paid a quarterly license fee of $100, while a merchant doing the same volume of business but whose goods were outside the corporate limits when offered for sale was required to pay a license fee of $2,000 for the same period. The ordinance was held to be void. In the case of *In re*

*Hines,* 33 Cal. App. 45 [164 Pac. 339], an ordinance identical in principle with the one here considered was held void. Its provisions were said to have been "plainly devised as a protective tariff for the benefit of laundries located in the city of Venice". The ordinance there attacked fixed a license fee of $12 per annum for every laundry located within the city. It also fixed a license fee of $120 per annum for every person operating a wagon or other vehicle for the delivery of laundry work to and from any laundry situated outside the limits of the city. The court said that its provisions "attempt to create and enforce a discrimination not based upon differences in the nature of the business being transacted or differences in the manner of conducting the same business, or any other difference other than the mere fact of difference in destination of the goods collected and delivered by wagons collecting for laundries located outside of the city and the destination of goods collected for delivery to laundries within the city". The same conclusions were reached in the cases of *In re Hart,* 36 Cal. App. 627 [172 Pac. 610], and *In re Riley,* 39 Cal. App. 58 [177 Pac. 854]. In each of these cases the ordinance was held void.

The case of *Town of St. Helena* v. *Butterworth,* 198 Cal. 230 [244 Pac. 357], arose over the attempt to enforce an ordinance imposing a license fee of $15 per quarter for every traveling salesman or merchant carrying his goods in an automobile or other vehicle operated over the streets of the town of St. Helena for sale to the merchants of the town and who did not maintain a fixed place of business within it. For those merchants maintaining business establishments within the corporate limits the ordinance fixed a license tax from $5 to $15 per quarter, determined by the amount of business done. No license was imposed on any merchant selling at wholesale only from a place of business outside the limits of the town but making no deliveries with his own conveyance. The ordinance was held void. The court said: "It discriminates between the wholesale merchant whose place of business is outside the town of St. Helena and who ships his goods to the merchants in the town by any other method than by personal delivery in a wagon, truck, automobile or other vehicle, and the wholesale merchant whose place of business is outside St. Helena, and who uses those means of delivering his goods within the town. The wholesale merchant in the first class is exempted; the merchant in others

is placed under the burden of the tax. We are unable to perceive any rational reason for such discrimination in favor of the one class as against the other.''

An ordinance of the city of Sacramento was challenged in the case of *In re Robinson*, 68 Cal. App. 744 [230 Pac. 175]. That ordinance imposed a license tax upon a solicitor selling or taking orders for merchandise for future delivery unless he was employed by a regularly established business house located within the city. The amount of the license was fixed at $200 per quarter. The court said: ''It will be observed that the boundary line of the incorporation known as the city of Sacramento determines the applicability of the provisions of the ordinance relating to the payment of a license fee. It is not the character of the business transacted. It is the place of the location of the storehouse or warehouse or head-quarters from which a solicitor draws his supplies that determines whether or not he, the solicitor, is subject to the pains and penalties of the ordinance. If he draws his supplies and fills his orders from a house situated within the exterior limits of the city of Sacramento, then he is free from all the provisions of the ordinance, but if he fills his orders from a house situated outside the city limits, whether .it be in or outside of the state of California, then he must necessarily pay the sum of two hundred dollars per quarter, and also give a bond to protect the persons from whom he may have taken orders.'' The ordinance was said to discriminate between persons doing exactly the same kind and character of business and conducting it in the same manner.

The respondents rely principally upon *Ex parte Haskell*, 112 Cal. 412 [44 Pac. 725, 32 L. R. A. 527], and *E. A. Hoffman Candy Co.* v. *City of Newport Beach, supra,* as sustaining their position. In the Haskell case this court upheld an ordinance imposing a license tax upon ''persons, outside of those conducting regular places of business'', selling different articles to persons other than merchants. In other words, the ordinance laid a tax on itinerants, and the court held the manner in which such persons conduct business is so different from the method of the ordinary merchant as to furnish a reasonable basis for classification. Also, the court said that when the legislative body of a city has seen fit to impose a heavier license upon the business when so conducted than where carried on in a different way the ordinance is not on its face necessarily unreasonable. ''Indeed,'' the court said,

"the right to make such discriminating distinctions, based upon like grounds, is amply sustained by authority, and in many cases involving a much greater disparity between the rates charged than is exhibited here".

It, therefore, appears that the decision in this case was based upon a recognition of the right of the legislative body of the city to classify the different kinds of business conducted within the city for the purposes of taxation. In affirming this right the court said: "The very power to license for purposes of regulation and revenue involves the right to make distinctions between different trades and between essentially different methods of conducting the same general character of business or trade. And that is all that is done here." But the right to make such distinctions is not broad enough to allow a municipality to tax persons doing a particular kind of business within the city and to entirely exempt other persons doing the same kind of business in essentially the same way. Nothing in the reasoning or decision of the Haskell case may be said to do so.

In the case of *E. A. Hoffman Candy Co.* v. *City of Newport Beach, supra,* the court sustained an ordinance which imposed a license tax of $12 per annum upon places of business within the city and a further tax of $10 per annum for each automobile or vehicle operated over the streets of the city by a person not having a business establishment within it. But the court, while recognizing that a discrimination for purposes of taxation solely because of the different sites of the principal places of business of those who sell goods or furnish service within the city and for no other reason "has been held illegal without deviation in decision", said that the case of *California Fireproof Storage Co.* v. *City of Santa Monica,* 206 Cal. 714 [275 Pac. 948], controlled its decision. However, in the latter case the ordinance, which was upheld, taxed *all persons* operating motor propelled vehicles within the city. It is clear that an ordinance which taxes those having their places of business within a city equally with those who may come into the city to transact the same kind of business does not discriminate. On the contrary, it places all on exactly the same basis.

But respondents insist that the ordinance must be upheld under the decisions of the Supreme Court of the United States. However, each one of such cases which has been cited in support of the ordinance is based upon facts

essentially different from those presented by the Santa Barbara ordinance.

The case of *State Board of Tax Commissioners of Indiana* v. *Jackson*, 283 U. S. 527 [51 Sup. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464], is cited by respondents as the leading case on the subject. In that case the court by the narrow margin of a five to four decision upheld a statute of Indiana imposing a license tax upon chain stores. But that statute, the court held, was based on distinctions other than the ownership of stores, the difference consisting "in organization, management, and type of business transacted". In the later case of *Liggett Co.* v. *Lee*, 288 U. S. 517 [53 Sup. Ct. 481, 77 Sup. Ct. 929, 85 A. L. R. 699], the court emphasized this when it said that its decision in the Jackson case was based upon a fundamental difference in the form of merchandising between a chain of stores and the ordinary individually operated store. It is to be noted also that the statute placed a license tax upon all stores, whether owned by a chain or by individuals. The Santa Barbara ordinance exempts the local laundry entirely.

The case of *Louisville Gas & Elec. Co.* v. *Coleman*, 277 U. S. 32 [48 Sup. Ct. 423, 72 L. Ed. 770], is of interest in this connection. In that case the court passed upon a statute in Kentucky which levied a tax upon the indebtedness secured by a mortgage lodged for record where the indebtedness did not mature within five years. In holding the statute unconstitutional the court stated that there are certain general and fundamental rights which must be recognized under the equal protection clause. It recognized the power of the state to classify for purposes of taxation, and that its right to classify for such purposes is of wide range and flexibility. But it pointed out that the classification " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike' ".

It is certain, the court said, that one who secures priority for his lien for a period less than five years enjoys the same privilege as one who secures such priority for a shorter period. "The former reasonably may be required to pay proportionately less than the latter; but to exact, as the price of a privilege which, for obvious reasons, neither safely can forego, a tax from the latter not imposed in any degree upon the former

produces an obvious and gross inequality." The tax imposed by the Santa Barbara ordinance upon one class of laundry owners while exempting all others produces that same obvious and gross inequality. For mere difference in classification does not meet constitutional requirements. Classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis". (*Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150, 155 [17 Sup. Ct. 255, 41 L. Ed. 666].)

Respondents point to *Armour & Co.* v. *Virginia,* 246 U. S. 1 [38 Sup. Ct. 267, 62 L. Ed. 547], where a statute imposing a state license tax on persons selling goods within Virginia but manufactured without the state was upheld. By that statute the amount of the tax to be paid by each merchant was determined by the aggregate sum of purchases of merchandise to be sold or offered for sale, but "manufacturers taxed on capital by this state, who offer for sale at the place of manufacture, goods, wares, and merchandise manufactured by them" were excluded from its operations. It is clear that the state imposed its tax burdens upon all merchants with particular provision for those who were also manufacturers. Those manufacturers who were taxed on capital and sold their products at the place of manufacture were not required to pay an additional license tax. Merchants who were manufacturers and who were not taxed on capital paid a license tax based on the value of the goods purchased by them and the value of merchandise manufactured by them. Obviously all manufacturers were thus taxed. That those in the different classifications were taxed in different ways and in different amounts is unimportant. The constitutional requirements were met.

In the case of *Richmond Linen Co.* v. *Lynchburg,* 160 Va. 644 [169 S. E. 554], the court reviewed an ordinance of the city of Lynchburg imposing a license tax upon laundries soliciting general laundry work within the city and having it done outside the city. But the ordinance by its terms did not apply to a laundry located in the city of Lynchburg paying the regular license fee. The court in upholding the ordinance said that the outside laundries could not complain because the tax imposed upon them was not the same as that fixed for the establishments within the city limits because

"equality in taxation . . . is a dream unrealized". Here again all in the same business were taxed, although in different amounts.

The case of *Singer Sewing Machine Co.* v. *Brickell*, 233 U. S. 304 [34 Sup. Ct. 493, 58 L. Ed. 974], is also strongly relied upon by respondents. In that case a state law for revenue purposes required each person selling or delivering sewing machines to pay a license tax of $50 annually for each county in which he sold or delivered such articles. It also fixed an additional tax of $25 annually for each wagon or team used in delivering or displaying sewing machines but exempted merchants selling them at regularly established places of business. The court upheld the statute upon the ground that "there is an evident difference, in the mode of doing business, between the local tradesmen and the itinerant dealer, and we are unable to say that the distinction made between them for the purposes of taxation is arbitrarily made".

The difference in the mode of doing business was also the basis for the decision in *Rost* v. *Van Deman & Lewis Co.*, 240 U. S. 342 [36 Sup. Ct. 370, 60 L. Ed. 679, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421]. A statute of Florida imposed a license tax in a basic amount upon merchants and required an additional amount from those giving coupons, profit sharing certificates or trading stamps. It was upheld upon the ground that the method of doing business of the merchants who give something away with articles sold is of a particular character which gives a reasonable basis for classification. It appeared to the court that these merchants "tempt by a promise of a value greater than that article and apparently not represented in its price, and it hence may be thought that thus by an appeal to cupidity [they] lure to improvidence". This, the court held, authorized the legislature to classify such merchants as a separate group and to tax them accordingly.

Questions which arise when legislative bodies impose taxes based upon a classification of businesses or occupations are always difficult to solve. Those difficulties stand out in the many cases decided by closely divided courts. There is little difference in opinion concerning the fundamental principles involved. The application of those principles to particular situations brings the difference in views.

The very basis of constitutional government is equal protection of the law. The power to tax is the power to destroy. If taxes may be arbitrarily levied, there is no protection for either personal or property rights. Constitutional provisions, it was said in *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237 [10 Sup Ct. 533, 535, 33 L. Ed. 892], were not intended "to prevent a state from adjusting its system of taxation in all proper and reasonable ways". But what have been termed clear and hostile discriminations against particular persons and classes cannot be upheld.

There can be no doubt that the Santa Barbara ordinance is an attempt to discriminate in favor of laundries within the city. That legislation of such character may discriminate is not denied. There may be discrimination founded upon a reasonable classification of all persons transacting the same kind of business. But discrimination cannot go to the extent of being a mere subterfuge for legislation directed against a particular group of taxpayers. Justice Field in the case of *County of Santa Clara* v. *Southern Pac. R. Co.*, 18 Fed. 385, 399, stated the rule with clarity and vigor. He said: "Unequal taxation, so far as it can be prevented, is, therefore, with other unequal burdens, prohibited by the (Fourteenth) amendment. There undoubtedly are, and always will be, more or less inequalities in the operation of all general legislation arising from the different conditions of persons, from their means, business or position in life, against which no foresight can guard. But this is a very different thing, both in purpose and effect, from a carefully devised scheme to produce such inequality; or a scheme, if not so devised, necessarily producing that result."

The judgment is reversed.

Thompson, J., Waste, C. J., Shenk, J., and Curtis, J., concurred.

SEAWELL, J., Dissenting.—I dissent.

I am of the opinion that the rule enunciated in *Ex parte Haskell*, 112 Cal. 412 [44 Pac. 725, 32 L. R. A. 527], *E. A. Hoffman Candy Co.* v. *City of Newport Beach*, 120 Cal. App. 525 [8 Pac. (2d) 235, *California F. S. Co.* v. *Santa Monica*, 206 Cal. 714 [275 Pac. 948], and *Richmond Linen Co.* v. *Lynchburg*, 160 Va. 644 [169 S. E. 554], is controlling. Those cases, in my opinion, clearly establish that the ordinance of

Santa Barbara under consideration herein does not unlawfully discriminate between classes, and is a reasonable exercise of municipal power. Once it is conceded, as does the majority opinion, that the power exists to classify between inside and outside businesses, then the sole question is whether the particular ordinance is reasonable. The mere fact that inside business is not taxed at all under the present ordinance is immaterial. The question is simply one of degree.

Langdon, J., concurred.