[Civ. Nos. 3813, 3814. Fourth Dist. Nov. 10, 1948.]

FRANK FAIRCHILD et al., Appellants, v. A. A. BROCK, as Director of the Department of Agriculture, et al., Respondents.

(Two Cases.)

Adrian Marks and E. J. Marks for Appellants.

Fred N. Howser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondents.

MUSSELL, J.—These appeals are from judgments for defendants after orders sustaining demurrers without leave to amend.

In the first action plaintiffs allege in their amended complaint that plaintiff Howell purchased a steer from one Mr. Dink and that plaintiffs Howell and Fairchild entered into an agreement whereby Fairchild was to slaughter the steer upon premises owned by Howell; that Howell is a resident of Orange County and owns real property therein which he farms, raising and marketing various crops; that plaintiff Fairchild is a resident farmer in the same county and raises cattle, bovine animals, cows and steers and is engaged in the production of dairy products; that Howell will assist and super-

vise the slaughtering of the said beef; that the steer to be slaughtered is not to be sold or given away to any persons other than the members of the Howell family; that the animal will be slaughtered within the hours provided by law and that the animal is sound, healthful and wholesome, and fit for human consumption; that at numerous times prior to the filing of the action the defendants or their duly authorized agents have threatened to arrest plaintiffs if they slaughtered animals as referred to and that if the slaughtering takes place defendants will arrest and prosecute plaintiffs thereby depriving them of the right to use their own property without due process of law; that unless restrained the defendants will compel the plaintiffs to pay out a large amount of money in fines and penalties and will cause the frequent arrest of plaintiffs. The general demurrer of defendants was sustained without leave to amend and this appeal followed.

This action arose out of a dispute between Howell and the defendant agents of the Department of Agriculture and the sole question to be determined, according to plaintiffs, is: "May an individual purchase a steer from a livestock producer and transport said steer to his own premises and there under his supervision employ another person to butcher said steer; said steer being wholly for the consumption for one of the plaintiffs and not be placed in the channels of trade?"

The apparent contention of defendants is that Fairchild was engaged in and proposed to engage in the business of slaughtering without a license as required by section 346 of the Agricultural Code, which reads as follows:

"No person shall slaughter a bovine animal, or request or hire any other person who is not a licensed slaughterer to slaughter a bovine animal, and offer for sale the meat thereof, unless he has a slaughterer's license therefor, issued in accordance with the provisions of this article, except as herein otherwise provided."

Section 356 of the same code provides in part as follows:

"Any owner of property, or a ranchman located on a definite property as a tenant, lessee or purchaser under contract may slaughter cattle in small numbers on said premises for his own consumption, and may sell or give away a portion of the meat thereof except to a peddler, retailer, hotel, restaurant, or any person offering the same for public consumption."

Under the facts alleged, plaintiff Howell could lawfully purchase and slaughter a steer on his own premises and there is nothing in the statute to prevent him from hiring

another, under his supervision, to do the slaughtering. However, whether plaintiff Fairchild could be so employed presents another problem. Plaintiff Fairchild, to engage in the business of slaughtering, is required under the statute to procure a license therefor if he does not come within the exception set forth in section 356 of the code, *supra.* It is not alleged that plaintiff Fairchild had a license or that he was engaged in the slaughtering business and these considerations as well as many others may determine the action, if any, of the defendants in the event the threatened arrests are made.

In the second action it is alleged that plaintiff Courtwright is the owner of and farms real property in Orange County and besides raising agricultural crops, raises also "a certain number of bovine animals, cattle, cows, steers and swine, both for the market and for his own consumption"; that Fairchild is also a farmer and raises cattle in Orange County; that at numerous times Courtwright had requested Fairchild to kill and dress, on the Courtwright premises, certain swine and cattle raised by Courtwright; that these animals were used and consumed by Courtwright and his family and were not sold or given away; that after July 19, 1946, Courtwright hired Fairchild to slaughter a steer which had been raised by Courtwright and was a part of his herd; that the steer was to be slaughtered on Courtwright's property with the assistance and under the supervision of Courtwright, and that the defendants threatened to arrest both plaintiffs if they killed and dressed any animal as aforesaid.

The issues in this case are stated by plaintiffs in these words: "May a producer of cattle take a beef from his own herd and slaughter it on his own premises for his own use, the meat not to be sold or given away, the actual slaughtering to be done by a man hired for that purpose, but with the aid and assistance and under the supervision of the owner?"

Defendants concede that Courtwright, a producer of cattle, may lawfully slaughter animals on his own premises or hire another to assist him, provided the person so hired is not engaged in the business of slaughtering.

Section 347 of the Agricultural Code provides as follows:

"Every person slaughtering cattle as a business shall do so in a designated slaughter-house. Before beginning business he must purchase from the director a license to carry on such business and execute a bond to the State in the sum of one thousand dollars ($1,000), . . ."

Section 307 of the same code, in article 1 of division III, chapter 1, deals exclusively with the subject of "meat inspection" of slaughtered animals. It contains an exception to the necessity of compliance with the inspection of meat laws as in said article 1, otherwise provided. (*Boland* v. *Cecil*, 65 Cal.App.2d Supp. 832, 836 [150 P.2d 819].) Plaintiff Courtwright contends that the provisions of the section permit him to slaughter animals without the procurement of a license therefor. We conclude that the provisions of this section do not exempt the plaintiff Courtwright from the provisions of section 346, requiring a license, but that the facts alleged bring plaintiff Courtwright within the exemption of section 356, *supra*. (*Boland* v. *Cecil, supra*.)

Plaintiffs stipulate, for the purpose of these appeals, that Fairchild was not a licensed slaughterer but deny that he was engaged in the business of slaughtering. Whether Fairchild was so engaged is a fact to be determined by the court, if, as and when defendants carry out the threats to arrest plaintiffs. We think this question, as well as many others which may arise if an arrest is made, should be determined in the criminal action for the reasons hereinafter set forth.

The general rule as stated in 14 California Jurisprudence, page 212, is that "[a]n injunction will not be granted to protect a person from prosecution for the alleged commission of a criminal offense on a showing that he is not guilty of such offense or that the law does not apply to him. The court having jurisdiction over criminal offenses is the forum in which such questions of fact must be determined. And this is the rule irrespective of the contention that the writ may be issued to prevent a multiplicity of actions or to prevent an injurious interference with plaintiff's business."

As was said in *Sullivan* v. *San Francisco Gas etc. Co.*, 148 Cal. 368, 372 [83 P. 156, 7 Ann.Cas. 574, 3 L.R.A.N.S. 401]:

"We know of no principle of jurisprudence which authorizes a court of equity, on the ground that it will prevent a multiplicity of actions, or that it will prevent an injurious interference with plaintiffs' business, to proceed to investigate as to the truth of criminal charges that have been or may be preferred against him, to hear the evidence in regard to his guilt or innocence, to determine, in advance of the decision of the lawfully constituted criminal courts, the question of his guilt or innocence of pending charges and his probable guilt or innocence of future charges and, if found in his favor,

to forestall the action of the law courts and to enjoin the enforcement of a constitutional and valid law against him, on the sole ground that there is not, and never will be, sufficient evidence of his guilt.''

The rule was followed in *Los Angeles Title Ins. Co.* v. *Los Angeles,* 52 Cal.App. 152 [198 P. 1001], but an exception was made in those cases where the validity of the law or ordinance sought to be enforced was questioned. In *Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405, 407 [65 P.2d 884, 109 A.L.R. 895], the court said:

'' [W]hile 'an injunction cannot be granted to prevent the execution of a public statute, by officers of the law, for the public benefit' (sec. 526, subd. 4, Code Civ. Proc., sec. 3423, subd. 4, Civ. Code), it has been uniformly held that this provision does not apply to an unconstitutional statute or ordinance.''

In *Brock* v. *Superior Court,* 9 Cal.2d 291 [71 P.2d 209, 114 A.L.R. 127], the issue involved was the constitutionality of the California Agricultural Adjustment Act of 1935, and the validity of proceedings taken thereunder to regulate the marketing of oranges and grapefruit within the state. *Brock* v. *Superior Court,* 11 Cal.2d 682 [81 P.2d 931], was an action to enjoin the Director of Agriculture from enforcing provisions of the Agricultural Code, the complaint alleging that the Director of Agriculture failed to comply with the provisions of the Milk Control Act in the formation of an area and in the establishment of a stabilization and marketing plan for the sale of milk and cream within said area. The court held that as there were issues of fact tendered by the complaint in the injunction proceedings, the trial court had jurisdiction to try these issues of fact and that prohibition would not lie to restrain the trial court from issuing an injunction against an officer in an attempt to enforce a public statute, until these issues were determined. (*Agriculture Prorate Com.* v. *Superior Court,* 5 Cal.2d 550 [55 P.2d 495].)

The issuance of a temporary injunction growing out of a factual situation is usually one within the sound discretion of the trial court (*Brock* v. *Superior Court,* 11 Cal.2d 682, *supra*) and the question whether the acts of any petitioner constitute a violation of the statute may be raised, and ordinarily can only be raised upon the trial of such petitioner. (*Walsh* v. *Railroad Commission,* 16 Cal.2d 691, 694 [107 P.2d 611].) The validity of the statute here involved is not ques-

tioned and we conclude that the action of the trial court did not constitute an abuse of discretion. Plaintiffs failed to plead facts sufficient to entitle them to injunctive relief.

Judgments affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 3, 1948.