[No. B129519. Second Dist., Div. Two. Jan. 6, 2000.]

WRITERS GUILD OF AMERICA, WEST, INC., et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

476

**COUNSEL**

Gary L. Bostwick; Paul L. Hoffman; and Edward T. Fenno for Plaintiffs and Appellants.

James K. Hahn, City Attorney, Ronald Tuller, Assistant City Attorney, and Judith E. Reel, Deputy City Attorney, for Defendants and Respondents.

## Opinion

**MALLANO, J.***—Plaintiffs are the Writers Guild of America, West, Inc., a nonprofit California corporation, an association and labor organization of writers, and individuals Paul Guay, R. E. Daniels, Burt Prelutsky, Nancy de los Santos, Martin Schenk and Lucian Turscott IV. Defendants are the City of Los Angeles (the City) and individuals, employees of the City, sued in their official capacity. In their first amended complaint (complaint), plaintiffs challenge the constitutionality of the business tax ordinance (BTO) contained in the Los Angeles Municipal Code insofar as it mandates the registration, licensing and taxation of writers, including the individual plaintiffs, who reside in the City and engage in the creative writing process in their homes. (L. A. Mun. Code, § 21.00 et seq.) The trial court sustained the defendants' demurrer without leave to amend and dismissed the complaint. Plaintiffs appealed.

■ In reviewing the sufficiency of the complaint against a general demurrer that was sustained, we treat the demurrer as admitting all material facts that are properly pleaded and determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### The Complaint

In their complaint, plaintiffs allege the following. Sometime in 1997 or 1998, defendants began to interpret the BTO to apply to writers and others working in their homes. Consequently, writers were required to obtain a business tax registration certificate and pay a business tax, or face a criminal penalty up to a $1,000 fine and six months in jail. Under the BTO, defendants are authorized to enter, inspect and examine all places of business in the City to determine compliance. Defendants have provided plaintiffs and others with contradictory and vague directives and instructions about which category or categories of businesses in the BTO cover writers. Defendants have stated that writers fall within the category of "radio and television broadcasters." Defendants have also stated that writers may fall in the category relating to "professions and occupations" or "motion picture, radio and television producers." Each of these three categories is taxed at a different rate. Writers working in their homes who are deemed to be in the "professions and occupations" category are exempt from the business tax if

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

they are employees. Writers working at home who are deemed to be in other categories are not exempt even if they are employees. As a result, writers are uncertain as to their obligations under the BTO. A great potential for suppression of unpopular free speech exists as a result of the City's discretion in deciding into which category a writer should be placed. None of the categories of business taxation appears to apply to writers engaged in the creative process at home. Efforts to obtain clarification from City officials have not been successful. There are no established standards, regulations or directives upon which the City may decide whether a writer is subject to the BTO. Thus, City officials have limitless and arbitrary discretion to impose taxes on plaintiffs. The BTO lacks a "prompt or effective system by which a writer may appeal decisions made by defendants to impose tax . . . ." A copy of the BTO is attached to the complaint.

The complaint sets forth six causes of action. The first is brought under 42 United States Code section 1983 (section 1983). It alleges that defendants violated plaintiffs' First and Fourteenth Amendment rights (1) by imposing a business tax on, and requiring a business tax registration certificate of, plaintiffs, (2) by allowing intrusive means of enforcing the business tax, including the review of drafts of writing and other protected materials reflecting the creative process, (3) by discriminating among different categories of writers, (4) by imposing what amounts to a municipal income tax on writers who engaged in the creative process at home without imposing such a tax on other residents of the City who realize personal income, (5) by threatening to enforce a home business taxation scheme lacking reasonably ascertainable standards for its application, (6) by providing the City with unlimited and standardless discretion to determine into which category a writer falls, (7) by authorizing the City authorities to examine the private creative materials of writers, including materials stored on home computers and in diaries and other personal materials relating to the creative process within writers' homes, and (8) by imposing a privilege tax on a guaranteed right. The second, third and fourth causes of action are also brought under section 1983 alleging respectively a violation of the due process clause of the Fourteenth Amendment, a violation of the equal protection clause of the Fourteenth Amendment, and, a violation of the Fourth and Fourteenth Amendments. The last two causes of action set forth the remedies sought by plaintiffs, the fifth for injunctive relief and the sixth for declaratory relief. All causes of action are based on the preceding paragraphs in the complaint in what is sometimes referred to as "chain pleading."

*Discussion*

The threshold question is whether this court has jurisdiction to hear plaintiffs' claims. Insofar as they are based on section 1983, the United

States Supreme Court has answered the question in the negative in *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n* (1995) 515 U.S. 582 [115 S.Ct. 2351, 132 L.Ed.2d 509] (*National Private Truck*). There, certain Oklahoma taxes were challenged in state court as violating the commerce clause of the United States Constitution. The Supreme Court, recognizing Congress's and the court's "aversion to federal interference with state tax administration," held that "§ 1983 does not call for either federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists." (*Id.* at pp. 586, 589 [115 S.Ct. at pp. 2354, 2355].) "When a litigant seeks declaratory or injunctive relief against a state tax pursuant to § 1983, however, state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate legal remedy." (*Id.* at p. 592 [115 S.Ct. at p. 2357].) Here, there is an adequate legal remedy for plaintiffs in the form of a suit for a refund in superior court, in which constitutional objections to the BTO may be raised with the right of appeal of any adverse decision. (*General Motors Corp. v. City of Los Angeles* (1995) 35 Cal.App.4th 1736 [42 Cal.Rptr.2d 430].)

Plaintiffs contend that language in footnote 6 of *National Private Truck* creates an exception which permits them to pursue their case. In the footnote, the court stated that "there may be extraordinary circumstances under which injunctive or declaratory relief is available even when a legal remedy exists. For example, if the 'enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, [or] throw a cloud upon the title,' equity might be invoked" (*National Private Truck, supra*, 515 U.S. at p. 591, fn. 6 [115 S.Ct. at p. 2357], quoting *Dows v. City of Chicago* (1870) 78 U.S. 108 [20 L.Ed. 65]). The court discussed further only the multiplicity of suits between the same parties exception. Here, we do not have a multiplicity-of-suits situation as described in the footnote. Moreover, plaintiffs have failed to demonstrate how they might suffer irreparable injury here warranting removing them from the purview of *National Private Truck*.

In *California v. Grace Brethren Church* (1982) 457 U.S. 393 [102 S.Ct. 2498, 73 L.Ed.2d 93], state tax laws were challenged as violating the establishment and free exercise clauses of the First Amendment. The Supreme Court held that the Tax Injunction Act (28 U.S.C. § 1341) prohibits declaratory relief as well as injunctive relief against the state taxing authorities unless there is no plain, speedy and efficient remedy for the taxpayer in state court. The court stated that "Carving out a special exception for taxpayers raising First Amendment claims would undermine significantly Congress' primary purpose 'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of

taxes.' [Citation.]" (457 U.S. at pp. 416-417 [102 S.Ct. at p. 2512], fn. omitted.) The court indicated that a claimed violation of the equal protection clause ought to be treated no differently. The court rejected the taxpayer's claim that they had no plain, speedy, and efficient remedy because they must meet certain record keeping, registration and reporting requirements before bringing a state court refund suit.

With respect to plaintiffs' claims of irreparable injury, we observe a wide variance between the description of the BTO in the complaint and the BTO itself. For example, plaintiffs' allegations that the BTO would enable the City to review a writer's drafts, examine materials on a writer's home computer and in diaries, and other personal materials are not borne out by an examination of the BTO. It does give the City the right to audit and examine "all books and records, and, where necessary, all equipment, of any person engaged in business in the City for the purpose of ascertaining the amount of business tax . . . ." However, plaintiffs do not allege that the City has snooped through the computer, diaries or personal materials of any writer in order to ascertain how much business tax is owing or explain why the City is likely to do so.

Although not pleaded in the complaint, plaintiffs complain that the BTO will cause a writer to lose his or her anonymity, even to the government. They point out that the City may release the names and addresses of those to whom a business license is issued. Plaintiffs do not contend that they have the right to be anonymous to the extent of not having to file federal and state income tax returns revealing their names. They do not explain how their anonymity as a writer is lost since revealing plaintiffs' true names does not prevent them from writing under a nom de plume.

We conclude that plaintiffs do not fall within the irreparable injury exception found in footnote 6 of *National Private Truck* (515 U.S. at p. 591 [115 S.Ct. at p. 2357]). Accordingly, the court has no jurisdiction to hear any of plaintiffs' section 1983 claims. Our next task is to determine whether plaintiffs are permitted under California law to seek injunctive and declaratory relief on their federal constitutional claims apart from section 1983.

In *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720 [192 P.2d 916] (*Modern Barber*), the court upheld a provision in the Unemployment Insurance Act prohibiting injunctive relief to prevent the collection of a contribution under the act from the petitioner. In doing so, the court observed: "The due process clause [of the federal and California

Constitutions] does not guarantee the right to judicial review of tax liability before payment. The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned. [Citations.]" (*Id.* at pp. 725-726.)

In *Aronoff v. Franchise Tax Board* (1963) 60 Cal.2d 177 [32 Cal.Rptr. 1, 383 P.2d 409] (*Aronoff*), the court held that injunctive relief to restrain the collection of additional personal income taxes based on the disallowance of deductions claimed by the petitioner was barred by statute and article XIII, section 15 of the California Constitution. The court stated: ". . . [I]t is clear that depriving the petitioner of the remedy of mandate would not deprive him of due process of law, and no other constitutional right under which he might claim this particular form of relief has been suggested. *The due process clause [of the federal and California Constitutions] does not guarantee the right to judicial review of tax liability before payment.* The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned." (60 Cal.2d at p. 179, original italics.)

Similarly, in *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277 [165 Cal.Rptr. 122, 611 P.2d 463] (*Pacific Gas & Electric*), the court determined that article XIII, section 32 of the California Constitution barred three public utilities from seeking injunctive and declaratory relief to compel the State Board of Equalization to adjust real property tax assessments, as the proper procedure was by payment of the tax and suit for refund. The court stated: "Even in the absence of constitutional guidance, courts recognized the dangers inherent in delaying collection of needed public revenue and were extremely reluctant to interfere with the taxation process before payment." (27 Cal.3d at p. 282.) " 'Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.' " (*Pacific Gas & Electric, supra*, 27 Cal.3d at p. 283, quoting *Dows* v. *City of Chicago supra*, 78 U.S. 108, 110 [20 L.Ed. 65, 66].)

Although these three cases involve California constitutional and statutory prohibitions against granting injunctive relief against the collection of taxes, the strong public policy requiring a taxpayer to pay the tax and sue for a refund is manifest.

Plaintiffs primarily rely on the following five cases to establish that they are entitled to seek injunctive relief on their federal constitutional claims

under California law. In *Long v. City of Anaheim* (1967) 255 Cal.App.2d 191 [63 Cal.Rptr. 56] (*Long*), members of the Socialist Labor Party (Party) brought suit to enjoin the Cities of Anaheim and Garden Grove from exacting a business license fee from members of the Party who distributed and sold the Party's official newspaper. The court concluded that the members were exempt under the city ordinances in question, stating that to render a contrary interpretation could culminate in a decision determining that the ordinances were unconstitutional. There was no discussion in the opinion concerning the jurisdiction of the court to enjoin the collection of taxes, and, accordingly, it is not binding precedent on that point. In *City of Alameda v. Premier Communications Network, Inc.* (1984) 156 Cal.App.3d 148 [202 Cal.Rptr. 684], the City of Alameda brought suit against the defendant for failure to pay a business license fee mandated by an ordinance. The defendant cross-complained to enjoin enforcement of the ordinance and was successful. On appeal, the court determined that the ordinance violated defendant's First Amendment rights and upheld the injunction. As was the case in *Long*, there was no discussion in the opinion regarding the jurisdiction of the court to enjoin the collection of taxes. For the same reason, the two other cases cited by plaintiffs in this regard, *Festival Enterprises, Inc. v. City of Pleasant Hill* (1986) 182 Cal.App.3d 960 [227 Cal.Rptr. 601] and *United Artists Communications, Inc. v. City of Montclair* (1989) 209 Cal.App.3d 245 [257 Cal.Rptr. 124], dealing with city admission taxes, are not relevant precedent. (*Fricker v. Uddo & Taormina Co.* (1957) 48 Cal.2d 696, 701 [312 P.2d 1085] ["cases are not authority for propositions not considered"].)

Finally, in *Bueneman v. City of Santa Barbara* (1937) 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895] (*Bueneman*), the plaintiff brought an action to restrain enforcement of a license ordinance imposing a $200 license fee on laundries that picked up and delivered laundry in the City of Santa Barbara but performed the work of laundering outside the city. No fee was imposed on laundries that did the laundering inside the city. The court held that the ordinance violated the Fourteenth Amendment to the United States Constitution and sections 13 and 21 of article I of the California Constitution by denying the plaintiff the equal protection of the laws and by granting privileges and immunities to one class of citizens which are not accorded to all citizens similarly situated. In a terse two-paragraph discussion, the court also ruled that an action may be maintained to restrain the enforcement of a license ordinance. The court observed that the principle that " 'an injunction cannot be granted to prevent the execution of a public statute by officers of the law for the public benefit' [citations] . . . does not apply to an unconstitutional statute or ordinance." (*Bueneman, supra,* at p.

407.) It also discussed the proposition that a court of equity will entertain a suit brought to test the validity of an enactment under which a person is facing criminal prosecution. The court did not discuss the enjoining of the collection of a tax nor the public policy against such a procedure.

In light of the strong declaration of public policy against enjoining the collection of taxes in *Modern Barber*, *Aronoff* and *Pacific Gas & Electric* which followed *Bueneman* by 11, 26 and 43 years, respectively, we conclude that plaintiffs are not permitted to assert federal Constitution claims under California law in the manner they seek to do. We recognize that these three cases deal with the collection of state taxes and here we deal with a city tax. Moreover, we have discussed cases in which courts entertained suits seeking to enjoin city taxes or fees, all of which are not precedent in that regard as not having discussed the propriety of the procedure involved. Yet, we see no reason why we should not follow the public policy set forth in *Pacific Gas & Electric* evoking the language of the United States Supreme Court's 1871 decision of *Dows v. City of Chicago*, *supra*, 78 U.S. 108, 110 [20 L.Ed. 65, 66]: "Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public."

Our lot is not to comment at this time on the wisdom of the BTO, or on its constitutionality or clarity, in its application to creative writers. Nor should we rule on feared enforcement procedures based on speculation and not on facts alleged to have occurred. This decision merely holds that the individual plaintiffs, in order to initiate a suit for relief, must make a tax payment and sue in superior court for a refund, at which time they may fully litigate all of their contentions made here. However, should the City bring a tax collection suit against a writer, our decision would not prevent him or her in that suit from urging defenses such as raised by plaintiffs here. (See *Jefferson County v. Acker* (1999) 527 U.S. 423 [119 S.Ct. 2069, 144 L.Ed.2d 408].)

Finally, we do not find it was an abuse of discretion for the trial court to have denied plaintiffs' leave to amend their complaint to add claims for violations of the California Constitution. Plaintiffs have not demonstrated that there is a reasonable possibility that injunctive or declaratory relief is available for such claims. (See *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) Inasmuch as we have concluded that this court has no jurisdiction to hear plaintiffs' claims, we need not discuss the other issues raised by the parties.

*Disposition*

The judgment is affirmed.

Boren, P. J., and Nott, J., concurred.