# Richmond

## VIRGINIA ELECTRIC AND POWER COMPANY V. COMMONWEALTH OF VIRGINIA.

January 13, 1938.

Present, All the Justices.

The opinion states the case.

*Hunton, Williams, Anderson, Gay & Moore,* for the appellant.

*Abram P. Staples, Attorney-General,* and *W. W. Martin, Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The Virginia Electric and Power Company, hereinafter designated appellant, by this appeal is seeking to reverse an order of the State Corporation Commission denying it the right to recover that part of a tax assessed (and paid under protest) for the year 1934, upon its gross receipts, derived from the operation of motor vehicles (buses) used as an auxiliary to, and in connection with its electric railways maintained in the cities of Richmond, Petersburg, Norfolk, and Portsmouth.

The facts found by the Commission are stated in the opinion of Commissioner Ozlin as follows: "That the Virginia Electric and Power Company is a corporation duly chartered by the State of Virginia; that the present charter powers of this company are the result of various charters, mergers and amendments to charters, extending over a considerable period of years, and not deemed necessary to state in detail here; that it is authorized by its charter, and by amendments thereof, amongst other things, to conduct an electric street railway business in the cities of Richmond, Petersburg, Norfolk, and Portsmouth, and in these cities, to operate motor vehicles engaged in transporting persons solely within the limits of such cities; that it also operates other motor vehicles, for the transportation of passengers for hire as a common carrier over certain public highways of the State, for which latter operations petitioner obtains certificates of public convenience and necessity as a motor vehicle carrier, as other such carriers are required to do, and pays taxes imposed on such carriers by chapter 360, Acts of Assembly of 1932, including a road tax of two per centum on the gross transportation receipts of such carrier; that the gross receipts of petitioner for motor vehicles operated solely within the limits of the cities mentioned are not included in the road tax paid as a motor vehicle carrier.

\* \* \* \* \* \* \*

"That the gross transportation receipts of petitioner, including receipts from motor bus operations within the limits of the said cities, and receipts from the operation of

electric railways for the year 1933, were $3,706,901.04, and receipts from its motor bus operations outside of said cities for the same year were $12,736.46.

"That the State Corporation Commission of Virginia assessed against petitioner for the year 1934 a franchise tax on such total gross transportation receipts of one and six-tenths per centum on the said sum of $3,706,901.04, which tax amounted to $59,310.42; that the Commission likewise assessed a valuation tax of two-tenths of one per centum on its entire gross transportation receipts from city and county operation, which amounted to $7,439.27, or a total franchise and valuation tax of $66,749.69, which total tax was paid by petitioner on September 29, 1934; but that of such total tax, the sum of $25,971.82 was paid by petitioner under protest, being the tax on $1,441,463.60, which petitioner alleged was its gross receipts from motor bus operations within the limits of said cities, and not subject to said taxes."

Appellant's dominant contention seems to be that the term "gross transportation receipts," as used in pertinent sections of the Virginia Constitution, is limited to gross receipts derived from transportation of passengers and freight by rail or water, and does not include receipts derived from transportation of passengers and freight by any other method or means, and more specifically the term does not include the transportation by motor vehicles.

The reasons advanced in support of this contention are: (1) Motor buses or vehicles for transportation were unknown to the framers of the Constitution, hence they could not, by the use of the term "gross transportation receipts," have intended to include revenues therefrom; (2) that the Corporation Commission so construed the term as used in the Constitution, and in section 216 of the Tax Code (Code 1930, appendix, p. 2191), prior to 1934; (3) that the adoption of the amendment to section 216 of the Tax Code was an abortive attempt by the legislature to change provisions of the Constitution.

These matters will be discussed in the order stated.

■ The framers of the Constitution may not have had in mind revenues from motor buses, but they knew they were drafting a Constitution that in the ordinary course of events would remain the organic law of the land for a number of years. They were not attempting to draft a static instrument, but an instrument framed to meet changing conditions and circumstances that would inevitably result from the growing knowledge and wisdom of mankind. In no one of the three pertinent sections of the Constitution is the term "gross railway receipts" used. The expression in section 176 is "each railway corporation, *whatever its motive power,* now or hereafter liable for taxation * * *." In section 177, the language is "Every such railway * * * corporation shall also pay an annual franchise tax to be prescribed by law, upon the *gross receipts hereinafter specified* in section 178, for the privilege of exercising its franchise in this State." Again, in section 178 the language is, "The amount of such franchise tax shall be equal to such per centum of the *gross transportation receipts* * * *." (Italics supplied in all quotations.) Regardless of what may have been in the minds of the members of the Constitutional Convention, the language chosen by them is broad enough to include all gross receipts derived by a railway corporation from its transportation business, whatever the motive power used.

Section 176 of the Constitution directs the Commission to annually ascertain and fix taxable values on real estate, rolling stock, and other personal property, with certain exceptions, of all railway and canal corporations. Section 177 provides that every such corporation shall pay an annual franchise tax upon the gross receipts as specified in section 178, which with the tax upon the property mentioned in section 176, "shall be in lieu of all other taxes or license charges whatsoever upon the franchise of such corporation, the shares of stock issued by it, or upon its property assessed under section one hundred and seventy-six; * *" Section 178 prescribes the method by which the tax on the gross transportation receipts shall be computed.

The legislature, under the provisions of these sections of the Constitution, enacted section 216 of the Tax Code, in which it fixed the amount of the annual franchise tax, using the term "gross transportation receipts" as it is used in the Constitution. This was the law for a number of years prior to 1934.

The Commission made no serious attempt to include bus receipts in fixing the amount of the franchise tax against railway corporations until 1928. The Commission considered the question informally then, and by a divided Commission decided that transportation receipts derived from bus operation of a railway corporation should not be included in the term "gross transportation receipts." Hence the revenue of bus operations of appellant, and other companies similarly situated, escaped this tax until 1934. Governor George C. Peery, who was a member of the Commission from 1929 to 1933, stated in his inaugural address before the General Assembly of 1934, that "The gross receipts of the bus business of these companies are not taxed by the State under existing laws. It is recommended that the bus operations of these companies in cities be taxed at the rate of 1.6% (the rate applicable to the street railway business with which the bus business as conducted is inseparably connected). This would yield per annum $30,000."

. Pursuant to this recommendation, and a few weeks thereafter, the following amendment was adopted to section 216 of the Tax Code: "Whenever such railway corporation operating an electric railway or railways shall operate motor vehicles engaged in transporting persons or property solely within the limits of any city or town in this State, as an auxiliary to or in connection with such electric railway operation, then the gross receipts derived from such motor vehicle operation, shall be treated as electric railway receipts and be subject to the same annual State franchise tax as provided for herein."

Appellant contends that the Commission in its administrative capacity having previously construed the term "gross transportation receipts," as used in the Constitution,

to exclude receipts derived from bus operations, the above amendment was simply an attempt on the part of the legislature to overrule that construction and to enlarge constitutional provisions, which the legislature had no power to do.

The vital question, as we understand the case presented, is, are "gross transportation receipts," as the term is used in the Constitution, limited to receipts collected by railway corporations from transportation over rails or water?

■■ Appellant urges this court to adopt the construction of the phrase made by the Corporation Commission, both in its administrative and judicial capacities, and followed for a number of years. This argument is based on the familiar doctrine that in doubtful cases the court will adopt that construction which administrative officers charged with the duty of enforcing a particular law have placed on such law, where such construction has been acquiesced in by the legislature and the public for a long period of time. The record shows that when the Commission's construction of the language was called, by the Governor, to the attention of the legislature, that body adopted the 1934 amendment to section 216 of the Tax Code (Code 1936, appendix, p. 2469). Neither the Chief Executive, in recommending the measure, nor the legislature, in adopting it, attempted to make any change in the Constitution. They evidently were of opinion that the Corporation Commission had made an erroneous construction of the language of the Constitution, and chose this method of expressing their construction of the constitutional provision in an effective way.

The result is that this court is now confronted with one construction of the constitutional provision by the Corporation Commission, and another construction of the same provision by the Chief Executive and the legislature. This later construction is now approved by the Commission itself. In the light of these facts, and section 156 of the Constitution, we must regard the final action of the Commission as *"prima facie* just, reasonable and correct." Turning again to the facts, we find the following statement made by

appellant's counsel before the Commission: "* * * the Company was organized in 1909 basically as a railway corporation engaged incidentally in light and power operations, being organized under the statute for purchase of property under foreclosure proceedings to organize corporations along the lines there adopted. At that time the greater portion of revenue was from railway operation. That was in 1909. * * * As time went on the company grew and the first main reorganization was in 1925 when the Spotsylvania Corporation, which was the Company owning the property in Fredericksburg, was merged with the Virginia Electric & Power Company, the Norfolk-Portsmouth properties being merged in 1911.

"By 1926 there had been raised a very serious competitive condition in regard to transportation conditions in these cities, independent bus companies having sprung up in the cities; very substantial companies some of them and others of lesser importance but numerous, for instance, in Norfolk. The Company was confronted with the problem as to what should be done in that situation and it was finally decided to make an earnest effort to acquire by purchase all of those companies. The result was that over a period of several months the Company did acquire all of the competing bus lines."

Commissioner Fletcher: "Were those bus lines operating solely in the city or partly in the city and partly without?"

Mr. Moore: "I think they were operating solely within the city. The Richmond Rapid Transit Company had the Floyd Avenue Line which has always been the most profitable line. That was the heart of their system. In Norfolk there were a lot of independent operators operating in cut throat competition.

"Being in that position, the Company came to the Corporation Commission to discuss that large operation, and it was felt that there should be an amendment to the charter which would expressly authorize the conduct of motor bus operation by the company. Accordingly, on February 25th,

1926, a charter amendment was granted by the Commission, which reads as follows:

" 'That Article VII of the Articles of Association of the Company be and hereby is amended by inserting a new subsection, immediately following subsection (h) of Section 2 of said Article, to be designated as subsection (hh), reading as follows:

" '(hh) To purchase, construct, or otherwise acquire, use run and operate as a common carrier for hire, vehicles and buses of all classes and description, propelled by gasoline, electricity, steam, or other motive power, over the streets and public ways in the various cities, towns and counties in the State of Virginia or elsewhere, including, without intending to limit the foregoing general language, the cities of Richmond, Petersburg, Norfolk and Portsmouth, and the counties adjacent thereto, and to do all other things and carry on all other kinds of business reasonably incidental or appurtenant thereto or in aid thereof.' "

Appellant acquired these competing motor vehicle lines for the purpose of protecting and preserving its monopoly of transportation on fixed schedules to all sections, in each of the cities. Thereafter appellant operated its railways and motor vehicle business within the municipalities as one transportation system. The Commission found that such systems, in each municipality, were conducted in the following manner:

"That the motor vehicles, operated solely within the limits of the cities aforesaid, are operated in conjunction with and as an auxiliary to its electric railway operations within said cities; that, over a period of years, the petitioner has from time to time obtained permission from the State Corporation Commission of Virginia to abandon certain portions of its street railway lines, and substitute buses therefor, and has inaugurated bus lines within the limits of said cities, as an aid and auxiliary to its street railway systems; that the said operations of its street cars and buses are carried on essentially as one operation, no accurate account being kept of the amount of business done or re-

ceipts from its street railways on the one hand, and its buses on the other hand, but, that, in all essential particulars, the two operations are carried on as one co-ordinated transportation system. * * *

"The record shows that a considerable portion of revenue is derived from the sale of weekly passes. These passes are good on both car and bus. Tokens are sold, which, in three of the cities, are good alike on street cars and buses. Transfers are issued from bus to street car, and from street car to bus, without charge, in Norfolk, Portsmouth, and Petersburg. In Richmond, transfers are issued without charge from bus to street car; they are also issued from street car to bus, but, on some lines, a charge of one cent is made. A whole reading of the evidence shows conclusively that the two methods of transportation are inextricably interwoven into one single transportation system."

Under this state of facts, it seems to us that it was the duty of the Commission under the mandate of the Constitution, with or without the 1934 amendment, to include the revenue collected by appellant from its motor bus operations within the municipalities, as a part of the gross transportation receipts of the railway corporation.

Appellant attacks the provision of the 1934 amendment, and the present ruling of the Commission, on the ground that if the receipts of bus operations within cities are considered a part of its gross transportation receipts, then receipts of bus operations between cities and towns must be considered as a part of gross transportation receipts. The contention is that the legislature and the Commission have no right to make a distinction between these sources of revenue.

The complete answer to this contention is that appellant is not operating its interurban bus lines under any franchise, right or privilege granted it as a railway corporation, nor is it conducting these interurban bus lines as auxiliaries to or in connection with its railway business. It is conducting these bus lines under a "certificate of public convenience and necessity" granted pursuant to the provi-

sions of the motor vehicle law. Under this law, appellant is designated as a "motor vehicle carrier," and authorized to operate a motor vehicle over designated highways on a fixed schedule for the transportation of passengers and property for hire as a common carrier. Under this certificate or franchise appellant may operate over designated highways between incorporated communities. For this privilege the Commonwealth makes certain charges, and in addition exacts 2% of the gross transportation receipts collected by it as a motor vehicle carrier. However, the business it may conduct, as a motor vehicle carrier, is the transportation of persons and property between cities and towns, and expressly excludes the right of any motor vehicle carrier to transport persons or property "solely within the limits of any city or town." See Acts 1932, ch. 359, section 1, p. 701.

While the Commonwealth permits or authorizes appellant under one charter to conduct a street railway business in the four cities named, to manufacture light, heat and power, to generate gas within certain limits, to engage in a mercantile business and to operate as a motor vehicle carrier between certain incorporated communities, each business is classified and charged with taxes appropriate to the business conducted. As an electric railway corporation, it is charged with 1.6% of the gross transportation receipts received by it from the operation of its railway systems. The public utility business is charged a gross receipts tax. For the operation of buses as a motor vehicle carrier, it is charged a 2% gross receipts tax. Each business conducted bears its proportion of the burden of taxation, and under the construction of gross transportation receipts, none of its property escapes its proportionate share of the tax burden.

Appellant further contends, "If section 216 of the Tax Code, as amended, and section 230 (Code 1936, appendix, pp. 2469, 2480), be construed to apply to the appellant, there results a denial of equal protection of the law in violation of the Virginia Constitution, and section 1 of the

Fourteenth Amendment to the Constitution of the United States."

The reasons advanced in support of this contention are stated thus:

"(1) The tax on the gross receipts from bus operations conducted by the appellant as an electric railway is imposed on appellant while no such tax is imposed on other corporations conducting the same or similar business;

"(2) The tax of 1.6% on gross receipts of appellant, and a tax of only 1 3/16% on other railway corporations whose actual operating expenses exceed their transportation receipts, is an arbitrary, unjust and unreasonable discrimination against successful operation;

"(3) The gross receipts tax under the amendment to section 216 as extended under the construction given by the Commission to include bus receipts from operations within the city, and not to operations in the city and county and interurban operations, creates an arbitrary and unreasonable discrimination.

"(4) Section 230 exacting 2/10 of 1% as a special tax for special service is a denial of due process in that the payment required has no relation to the cost of the service."

■ The fallacy of the first reason assigned is that no corporation or person who conducts a single uniform transportation system, partly by rail and partly by motor vehicle, within any municipality, similar to appellant, escapes the burden of the tax. The tax purports to be, and is, imposed for the privilege of conducting a motor bus transportation business as auxiliary to, and in connection with, a railway transportation business. Appellant alleges that two corporations, operating motor buses in connection with a street railway business in cities, are taxed differently. These corporations are the Safety Motor Transit Corporation, doing a motor vehicle business in Roanoke, and the Citizens' Rapid Transit Company, doing a like business in Newport News. During the hearing it developed that the Citizens' Rapid Transit Company was a wholly owned subsidiary of the Virgina Public Service Company, and that

the Virginia Public Service Company operates a street railway in Newport News, and through its subsidiary company operates motor buses in connection with its street railway operations. As soon as this fact was called to the attention of the Commission, an investigation of the matter was ordered for the purpose of making the proper assessment.

The Safety Motor Transit Company is a private corporation operating motor vehicle lines entirely within the city of Roanoke. By a contractual arrangement with the street railway company, weekly passes and transfers, issued by one company, are accepted as payment for transportation by the other company. In other words, in the city of Roanoke, a railway corporation owns and controls certain railway routes, and a private corporation owns and controls certain motor bus lines within the city. These companies have entered into a mutual, convenient, and reciprocal arrangement, to accept passes and transfers issued by each other. Each conducts its own business separate and distinct from the other. Neither owns or controls the entire transportation system within the city. Appellant owns and controls all the transportation lines within the four cities named. It substitutes motor buses for street cars when it is to its financial advantage to do so. It uses the motor bus to increase its railway receipts, and street cars to increase its motor bus receipts. A mere statement of the facts reveals a marked distinction between the two classes of operations and amply justifies a different method of taxation.

"The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws *does not compel the adoption of an iron rule of equal taxation,* nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations.

"It is not the function of this court, in cases like the present, to consider the propriety or justness of the tax, to

seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature, if there are substantial differences between the occupations separately classified. *Such differences need not be great.* The past decisions of the court make this abundantly clear." *Richmond Linen Supply Co.* v. *Lynchburg,* 160 Va. 644, 169 S. E. 554, 555; *National Linen Service Corp.* v. *Lynchburg, et al.,* 291 U. S. 641, 54 S. Ct. 437, 78 L. Ed. 1039.

The second reason urged to sustain the contention that the tax imposed upon appellant results in a denial of the equal protection guaranteed by section 168 of the Constitution of Virginia, and section 1 of the 14th Amendment to the Constitution of the United States, is, that section 216 of the Tax Code divides railway corporations into classes for the purpose of fixing the amount of the franchise tax.

The statute imposes a franchise tax of 1.5% of gross receipts on railways operated by steam, and 1.6% of gross receipts on corporations operating an electric railway, and 1 3/16% on the gross transportation receipts of any railway, steam or electric, the actual operating expenses of which exceed its gross transportation receipts. No objection is raised as to the distinction made between steam and electric railways, hence no further consideration is given this classification.

As heretofore pointed out, this is a franchise tax imposed under a mandate of the Virginia Constitution. The amount of the tax is fixed by the legislature, which in the exercise of its discretion has placed a somewhat higher privilege tax upon railways that make a profit than on those operating at a financial loss. The clear cut distinction is the value of the franchise of railway corporations measured by net earnings. "The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Ref. Co.* v. *Louisiana,* 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, or if any state of facts reasonably can be conceived to sustain it." *State Board of Tax Com'rs of*

*Indiana* v. *Jackson*, 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536.

"If the selection of classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563, 30 S. Ct. 578, 580, 54 L. Ed. 883. See *City of Fredericksburg* v. *Sanitary Grocery Co.*, 168 Va. 57, 190 S. E. 318, 110 A. L. R. 1195.

A number of cases are cited by appellant in support of this contention. In each case so cited the above stated principle is recognized and restated in one form or another. However, the decision in each case was controlled by the application of the particular facts to the principle. The latest case cited on the point is *Stewart Dry Goods Co.* v. *Lewis*, 294 U. S. 550, 55 S. Ct. 525, 530, 79 L. Ed. 1054. In that case it appears that a Kentucky statute imposed a graduated excise or license tax on the gross sales of all retail merchants doing business in Kentucky. This graduated tax varied from .05% on $400,000 of sales, to .96% on $15,000,-000 of sales. This statute, by a majority of the Supreme Court, was declared invalid and in violation of the equal protection clause of the 14th Amendment. The basis of the decision seems to be that the sum exacted from the merchants doing a larger business was not only greater in gross amount, but larger in proportion to the same tax required of their smaller competitors, and that the graduation of the tax was not based on a reasonable approximation to the net earnings of the taxpayer.

The statute now under review makes the line of demarcation precisely on the basis of whether or not the corporation makes a profit. If it does, it is charged a somewhat higher privilege tax, if it does not, the tax imposed is less.

It is a matter of common knowledge that railway corporations of today are meeting strong competition, in the carriage of both passengers and freight, by motor vehicles and air lines, and that some corporations, both within and without the State, are in the hands of receivers,

and it is extremely doubtful whether some will survive the competition. The legislature made the classification with full knowledge of these facts. The classification is based on a reasonable approximation to the net earnings of the taxpayer.

The underlying principle in the classification now under review is an attempt on the part of the legislature to lighten the tax burden, to some extent at least, on the taxpayer least able to bear it. The volume of business done is not considered. A corporation with millions of dollars invested in its railway operation is treated just as the corporation with a few thousand dollars invested. If transportation receipts of neither exceed the operating expense, both are subject to the smaller tax. Indeed, if appellant's receipts from railway transportation should, for any year, be less than its operating expense, it would be entitled to the lower rate.

The theory that the amount of gross sales had no approximation to profits, expressed in the majority opinion in *Stewart Dry Goods Co.* v. *Lewis, supra,* is sharply attacked by Mr. Justice Cardozo in a vigorous dissenting opinion. The principle on which the classification is made by the Virginia statute is recognized in the following paragraph of the majority opinion delivered by Mr. Justice Roberts:

"The suggestion is made that the *ad valorem* property tax heretofore laid on Kentucky merchants bears more heavily upon the little dealer than upon his bigger competitor, as the real estate and stock of merchandise of the former is greater in proportion to the business done than is the case with the latter. This fact may indeed be a proper reason for adjusting *the tax burden so as better to reflect the fruits of the enterprise;* but it can afford no excuse for an arbitrary and unequal imposition as between persons similarly circumstanced." (Italics supplied.)

Whatever economic theory the nation may ultimately adopt, all theories, so far advanced, concede that, other things being equal, there is a marked difference in the value of an enterprise that makes an annual profit, and one that does not. In the usual course of events the business

of some taxpayer will reveal that such business is close to one or the other side of the line of demarcation, but that fact does not render the classification arbitrary or unreasonable. See *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037; *Clark* v. *Titusville,* 184 U. S. 329, 22 S. Ct. 382, 46 L. Ed. 569; *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 33 S. Ct. 441, 57 L. Ed. 730; *Quong Wing* v. *Kirkendall,* 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; *State Board of Tax Com'rs of Indiana* v. *Jackson, supra; Fox* v. *Standard Oil Co.,* 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780; *Curdts et al.* v. *South Carolina Tax Commission,* 273 U. S. 669, 47 S. Ct. 471, 71 L. Ed. 831, and *Watson* v. *Maryland,* 218 U. S. 173, 30 S. Ct. 644, 54 L. Ed. 987.

Under the equal protection law, appellant attacks the legislative classification of bus receipts from operation solely within cities, and bus receipts from operation of interurban lines, on the ground that there is no distinction between transportation receipts collected from one section and those collected from another.

This contention seems plausible on its face, but when considered in the light of the motor vehicle act, other sections of the Tax Code, and practical application, the reasons for the distinction made in the 1934 amendment to section 216 of the Tax Code, become apparent, and are neither unreasonable nor arbitrary.

As heretofore stated, the franchise granted to motor vehicle carriers gives such carriers the right to operate buses from designated points within to points without and between municipalities, and for the exercise of this privilege the State imposes a 2% tax upon the gross receipts. The regulation of the operation of buses wholly within any municipality is delegated to the municipality, and no gross receipts tax is imposed upon such operators within the municipality, unless such bus operation is a part of a railway operation, when the gross receipt tax, as stated, is 1.6% on all transportation receipts within cities. In neither the wording of the statute nor its practical application, is ap-

pellant charged more or less than any other corporation doing the same or similar business and similarly circumstanced. The 2% receipts tax is charged appellant as a motor vehicle carrier on a single independent enterprise. The 1.6% receipts tax is charged appellant upon its railway operations within cities, for the conduct of which system it uses both street cars and buses.

Appellant was unable to convince the Commission just what part of its transportation receipts was derived from its bus operations, and what part was derived from its street car operations. There was no such trouble in ascertaining the exact receipts derived from its operation as a motor vehicle carrier.

Appellant pays the 2% gross transportation receipts tax on its operation of interurban bus lines without protest. It is the smaller 1.6% tax on gross transportation receipts of its bus operations, as an auxiliary to its railway operations, within the cities, of which it complains. A taxpayer is not denied equal protection of the law when he belongs to the same class and receives the same benefits as those he charges are favored.

"As this court has often said, one who challenges the validity of state taxation on the ground that it violates the equal protection clause, cannot rely on theoretical inequalities, or such as do not affect him, but must show that he is himself affected unfavorably by the discrimination of which he complains * * *." *Roberts & Schaefer Co.* v. *Emmerson*, 271 U. S. 50, 46 S. Ct. 375, 376, 70 L. Ed. 827, 45 A. L. R. 1495.

This method of taxing receipts of motor vehicles operating solely within cities as an auxiliary to, and in connection with, street railway operations, dovetails with the scheme of taxation in force in this Commonwealth, avoids double taxation of any gross receipts, and places the burden of taxation equally upon all similarly situated.

Section 230 of the Tax Code authorizes a levy of 2/10 of 1% on gross receipts of certain public service corporations, including appellant. This is a service or valuation tax levied

for the specific purpose of raising funds to be expended by the Commission in making independent appraisals and valuations of property of corporations against whom the tax is assessed. In the application for refund of the amount of the tax now in controversy, appellant alleged that the Commission was without authority to assess this service tax on gross receipts from bus operations as already outlined. Appellant did not contest the validity of the levy of this tax on what it defined as "gross railway receipts," thus conceding that this valuation tax was valid in part. Indeed, in the application filed with the Commission alleging the erroneous assessment of the tax, and praying for a refund, this is stated: "Obviously the construction of section 216 aforesaid of the Tax Code determines the construction of section 230 aforesaid of the Tax Code."

The Commission heard and determined the case on this admission by appellant. The petition for appeal, which was adopted as the opening brief for appellant, so discusses the validity of the valuation tax. In its reply brief, filed November 12, 1937, just a few days before the case was heard by this court at its November term, appellant for the first time attacked the validity of this service tax on the ground that its imposition "is a denial of due process, inasmuch as the payment required has no relation to the cost of the service."

Under rules of procedure prevailing in this jurisdiction, this ground of attack is made too late. The allegation involves a question of fact and in order to raise it an appropriate allegation must be made in the pleadings, so that each litigant may have an opportunity to present evidence to establish or disprove the allegation. This was expressly recognized in *Great Northern Railway Co.* v. *State of Washington,* 300 U. S. 154, 57 S. Ct. 397, 81 L. Ed. 573, the only case cited by appellant to support this contention.

For the reasons assigned, the judgment of the Corporation Commission is affirmed.

*Affirmed.*