# Richmond

## Virginia Electric and Power Company v. Commonwealth of Virginia.

January 8, 1940.

Record No. 2215.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*Hunton, Williams, Anderson, Gay & Moore,* for the appellant.

*Abram P. Staples, Attorney-General,* and *W. W. Martin, Assistant Attorney-General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

In 1909 the Virginia Railway and Power Company was chartered under the laws of the State of Virginia as a public service corporation. Subsequently its name was changed to Virginia Electric and Power Company. By virtue of its original charter and amendments thereto, and through merger agreements with other corporations, it has the charter power to conduct the following five separate businesses and "to do all other things and carry on all other kinds of business reasonably incidental or appurtenant thereto or in aid thereof," viz:

(1) An electric street railway business in the cities of Richmond, Petersburg, Norfolk and Portsmouth;

(2) An interurban electric railway business between Richmond and Petersburg;

(3) The operation "as a common carrier for hire vehicles and buses of all classes and descriptions propelled by gasoline, electricity, steam or other motive power over the streets and public ways in the various cities, towns and counties in the State of Virginia, or elsewhere, including without intending to limit the foregoing general language, the cities of Richmond, Petersburg, Norfolk and Portsmouth, and the counties adjacent thereto."

(4) An electric light and power business in the cities and counties above named and generally throughout Tidewater Virginia and Northeastern North Carolina; and

(5) A gas business within the cities of Norfolk, South Norfolk and Norfolk county.

Prior to 1926 it operated an electric railway system in the cities of Richmond, Petersburg, Norfolk and Portsmouth, and in the territories contiguous thereto. It also operated an interurban electric railway line between Richmond and Petersburg.

In 1926, in order to meet the rapidly increasing competition of motor buses in these cities, it determined to enter the business of operating buses for transporting persons and property in certain parts of the territories then served by its electric railway system. In that year a charter amendment was granted by the State Corporation Commission which specifically authorized it to carry on the class of business described in paragraph (3) above.

Having obtained the necessary authority from the respective cities it began to operate motor buses therein in conjunction with street cars. The number of motor buses increased and the number of street cars decreased in the several cities until the operation of street cars was discontinued entirely in Portsmouth on July 27, 1935, and in Petersburg on June 7, 1936, leaving the transportation of passengers in these two cities entirely to motor buses.

In the cities of Richmond and Norfolk both street cars and motor buses are still in operation.

In the meantime the company had obtained from the State Corporation Commission, under the Motor Vehicle Carrier Act of 1932 (Acts 1932, ch. 359, p. 700), a certificate of convenience and necessity to operate a motor bus line between Richmond and Petersburg, and had discontinued the operation of its electric railway between these cities.

In 1938 the State Corporation Commission, acting under its interpretation of sections 215 and 216 of the Tax Code of Virginia, as amended, Code 1936, pp. 2466, 2467, assessed the company with a franchise tax measured by 1.6% of its

gross receipts derived from its operation of buses and street cars in the cities of Richmond, Petersburg, Norfolk and Portsmouth for the year 1937. Under section 230 of the Tax Code, Code 1936, p. 2480, it assessed an additional tax on the company measured by .2% of such transportation receipts.

Having paid the tax under protest, the company filed its petition with the State Corporation Commission asking for a refund of so much of the tax as was based upon its gross transportation receipts of $395,822.13, which were derived from the operation of buses in Petersburg and in Portsmouth, in which cities it operates no street cars. From an order denying the prayer of the petition this appeal has been taken.

The company bases its claim for a refund of taxes on two grounds:

(1) That there is no statute authorizing the inclusion of its Petersburg and Portsmouth bus receipts as a base for said franchise tax, that sections 215, 216 and 230 of the Tax Code, under which the assessment was made, do not authorize the inclusion of bus receipts derived from operations in a city wherein the company operates no electric railways;

(2) That if the said statutes are applicable and do authorize the inclusion of such bus receipts, they are invalid for the reason that they deny to the company the equal protection of the law guaranteed to it by the Fourteenth Amendment to the Constitution of the United States.

Section 177 of the Constitution provides that every railway or canal corporation shall pay to the State "an annual State franchise tax to be prescribed by law, upon the gross receipts hereinafter specified in section one hundred and seventy-eight, for the privilege of exercising its franchises in this State, * * *."

Section 178 of the Constitution provides that "The amount of such franchise tax shall be equal to such per centum of the gross transportation receipts of such corporation for the year preceding the year for which the tax is levied, or

the year for which the tax is levied, as may be prescribed by law, * * *." This section further provides how such gross transportation receipts shall be ascertained by the State Corporation Commission when the railway lies (a) wholly within this State, or (b) partly within and partly without this State.

In *Virginia Electric & Power Co.* v. *Commonwealth,* 169 Va. 688, 194 S. E. 775, we held that the term "gross transportation receipts" of a railway corporation, within the meaning of sections 177 and 178 of the Constitution, includes receipts from its bus operations as well as those from its railway operations, and hence that it is entirely within the power of the General Assembly to enact adequate legislation to use such bus receipts as a measure of the corporation's franchise tax.

The company does not controvert this holding. Its claim is that these sections of the Constitution are not self-executing; that the inclusion of its bus receipts as a measure for this tax must be based on some specific statute (*Commonwealth* v. *Stringfellow,* 173 Va. 284, 4 S. E. (2d) 357); and that sections 215, 216 and 230 of the Tax Code, under which this assessment was made, do not in terms provide for the inclusion of its bus receipts from the cities of Petersburg and Portsmouth, where the company operates no street cars, in the computation of this tax.

The Commonwealth on its part concedes that the above sections of the Constitution are not self-executing but insists that the assessment here was specifically authorized by those sections of the Tax Code just referred to.

Section 215 of the Tax Code, as amended, provides, among other things, that every railway corporation of this State not exempt from taxation by virtue of its charter shall, among other things, make an annual report to the State Corporation Commission of its gross transportation receipts, and directs that the Corporation Commission shall assess upon the said gross transportation receipts the taxes imposed thereon by law.

So much of section 216 of the Tax Code, as amended by the Acts of 1934, ch. 137, page 196, as is here material, reads as follows:

"*Section* 216. *Taxes on railway and canal corporations.*—
\* \* \* \* \* \* \* \* \* \*

"Every such railway or canal corporation shall pay to the State an annual State franchise tax for each calendar year equal to one and, one-half per centum upon the gross transportation receipts, hereinafter specified, for the privilege of exercising its franchise in this State, except that every such railway corporation operating an electric railway or railways shall pay to the State an annual State franchise tax equal to one and six-tenths per centum upon the gross transportation receipts, hereinafter specified, for the privilege of exercising its franchise in this State; \* \* \*.

"The amount of such franchise tax \* \* \* on every railway corporation operating an electric railway or railways shall be equal to one and six-tenths per centum of the gross transportation receipts of such corporation for the year ending December thirty-first preceding, to be ascertained by the State Corporation Commission in the following manner:

"(a) When the road or canal of the corporation lies wholly within this State, \* \* \* the amount of such franchise tax on every railway corporation operating an electric railway or railways shall be equal to one and six-tenths per centum of the entire gross transportation receipts of such corporation.

"(b) When the road or canal of the corporation lies partly within and partly without this State, \* \* \* . [Not material here.]

"Whenever such railway corporation operating an electric railway or railways shall operate motor vehicles engaged in transporting persons or property solely within the limits of any city or town in this State, as an auxiliary to or in connection with such electric railway operations, then the gross receipts derived from such motor vehicle operation, shall be treated as electric railway receipts and

be subject to the same annual State franchise tax as provided for herein."

The last paragraph was added by the Acts of 1934, ch. 137, page 196, and will be hereinafter referred to as the 1934 amendment.

Section 230 of the Tax Code, as amended by the Acts of 1933, Ex. Sess., ch. 14, page 30, provides for an additional tax of .2% upon the same gross receipts, to be determined under section 216 of the Tax Code.

It is conceded that the determination of the validity of the tax levied under section 216 of the Tax Code will determine the validity of that levied under section 230.

By its charter this corporation has obtained from the State and still holds the right to operate an electric railway system in four cities of the Commonwealth. This is a valuable right for which section 177 of the Constitution provides that it shall pay to the State "an annual State franchise tax to be prescribed by law," to be measured by its gross transportation receipts.

Section 216 of the Tax Code seeks to impose such an annual State franchise tax on a corporation of this character and provides that it shall be measured by 1.6% of its gross transportation receipts. The vital question is, does this section intend to include as a part of such gross transportation receipts bus receipts derived by the corporation from its operations in a city or cities in which it operates no street cars?

The company claims that section 216 of the Tax Code, as amended, provides for the inclusion in the computation of the franchise tax three classes of receipts:

(a) Electric railway receipts where the electric railway lies wholly within this State;

(b) Electric railway receipts where the electric railway lies partly within and partly without this State; and

(c) By virtue of the 1934 amendment, bus receipts of an electric railway operating motor vehicles within the limits of any city or town in this State as an auxiliary to or in connection with its electric railway operations.

It next argues that bus receipts derived from its Petersburg and Portsmouth operations must be included, if at all, under the classification in paragraph (c), that such receipts do not fall within the express language of this classification, and hence must be excluded from the computation of the tax.

The Commonwealth contends, and the Corporation Commission held, that the inclusion of bus receipts from the company's Petersburg and Portsmouth operations comes within the express terms of the 1934 amendment since the company is operating "one single transportation system, although the operation is in four separate cities," using both buses and street cars, and that this is an operation of "motor vehicles * * * as auxiliary to or in connection with such electric railway operations" as is contemplated by the language of the amendment.

There is considerable force, we think, in this argument since we are dealing with a franchise tax on the corporation's right to operate an entire electric railway system, to be measured by its gross transportation receipts, and since we held in *Virginia Electric & Power Co.* v. *Commonwealth, supra,* that the term "gross transportation receipts" may include receipts from buses as well as those from street cars.

However, as we shall presently see, the validity of the assessment does not depend upon the applicability of the 1934 amendment.

■ We agree with the holding of the Corporation Commission that the 1934 amendment was not designed to *exclude* these bus receipts from the computation of the tax. At the time of the adoption of the amendment the General Assembly was confronted with the situation where a majority of the Corporation Commission had held that the term "gross transportation receipts" in paragraph (a) of section 216 of the Tax Code did not include receipts by an electric railway company from its bus operations in cities carried on in conjunction with its street railway business. The amendment was adopted to correct this interpretation.

*Virginia Electric & Power Co.* v. *Commonwealth, supra* (169 Va., at pages 697, 698, 194 S. E., at page 778). Manifestly it was the purpose of the General Assembly to *include* in the computation of the tax these gross receipts which the Corporation Commission had previously excluded. It did not thereby intend to *exclude* any receipts theretofore included in the base of the tax.

But aside from the 1934 amendment, we think the Corporation Commission correctly held that the language in paragraph (a) of section 216 of the Tax Code is sufficiently broad to include bus receipts of this corporation from its Petersburg and Portsmouth operations.

Section 178 of the Constitution provides that a corporation of this character shall pay a franchise tax equal to such per centum of the gross transportation receipts "as may be prescribed by law, to be ascertained by the State Corporation Commission in the following manner:

"(a) When the road or canal of the corporation lies wholly within this State, the tax shall be equal to the prescribed per centum of the entire gross transportation receipts of such corporation.

"(b) When the road or canal of the corporation lies partly within and partly without this State, * * *."

It will be observed that section 216 of the Tax Code, prior to the 1934 amendment, Code 1930, p. 2191, follows faithfully the provisions of section 178 of the Constitution. It provides how the State Corporation Commission shall ascertain the gross transportation receipts of a railway corporation "(a) When the road or canal of the corporation lies wholly within this State," and "(b) When the road or canal of the corporation lies partly within and partly without this State."

As a part of paragraph (a) it further provides that "the amount of such franchise tax on every railway corporation operating an electric railway or railways shall be equal to one and six-tenths per centum of the entire gross transportation receipts of such corporation."

■ The language is broad and inclusive. Certainly the appellant corporation comes within its terms. By the provisions of its charter it is a "railway corporation operating an electric railway or railways." For this privilege the section provides that its franchise tax is to be measured by 1.6% of its "entire gross transportation receipts."

If as we held in *Virginia Electric & Power Co. v. Commonwealth, supra,* this language is broad enough to include bus receipts derived from operations in cities in conjunction with street railway operations, it is likewise broad enough to include bus receipts derived from operations in a city in which no street cars are operated.

■ Indeed, the language of paragraph (a) of section 216 of the Tax Code is equally as broad as that in section 178 of the Constitution, which we held in *Virginia Electric & Power Co. v. Commonwealth, supra* (169 Va., at page 696, 194 S. E., at page 777), "is broad enough to include all gross receipts derived by a railway corporation from its transportation business, whatever the motive power used."

But the company argues that paragraph (a) of section 216 of the Tax Code was designed to include in the computation of the tax revenue derived from its *railway* operations, and that its bus operations in a city or cities in which it operates no street cars are by virtue of its charter power to operate *motor vehicles* and not pursuant to its power to operate electric railways. It concedes, however, that where buses and street cars are operated jointly by it in a particular city so as to constitute one complete transportation system, the bus operation as well as the street car operation is by virtue of its power to operate electric railways. Indeed, we so held in *Virginia Electric & Power Co. v. Commonwealth, supra.*

The company does not claim that its bus operations in Petersburg and in Portsmouth are to be taxed under the Motor Vehicle Act (Acts 1932, ch. 359, p. 700) as are its receipts from its interurban lines. This act expressly excludes revenue derived from the operation of buses "solely within the limits of any city or town in this State" from

this classification. What the company claims is that the revenue derived from its bus operations in these two cities, where it operates no street cars, is not within any classification designated by the Legislature for taxation.

This argument is, we think, unsound. The company originally had the power under its charter to operate an electric railway business in four cities of the State. For a number of years it operated street cars alone in these municipalities. Then for its economic advantage, as the record discloses, it began to supplement its street car system with motor buses. For its further economic advantage it decreased its operation of street cars and increased its bus operations in each of these cities until the point was reached where it ceased altogether the operation of street cars in Petersburg and in Portsmouth.

Since, as we held in *Virginia Electric & Power Co.* v. *Commonwealth, supra,* the operation of buses was commenced and carried on by the company in the four cities as incident to its power to operate therein an electric railway system, such operation has not ceased to be incidental thereto merely because in two localities no street cars are operated. As the Corporation Commission points out in its opinion in the instant case, "The whole manner of conducting the motor bus operations shows conclusively that at no time were such operations treated or considered in any other way than as an incidental operation of the electric railway company."

It is clear, we think, that so long as the company retains the power or right under its charter to operate an electric railway system in Petersburg and Portsmouth, it retains the power to operate as incident thereto buses in these cities. Indeed, under its present charter powers it may revert to the operation of street cars in these two cities. So long as its present charter powers are unchanged it is an electric railway corporation with power to operate street cars and buses in the four cities of Richmond, Petersburg, Norfolk and Portsmouth, and it is this power or right or franchise upon which the State levies a tax, to be measured by

the prescribed percentage of its gross transportation receipts derived from its entire transportation system.

The company next contends that if its Petersburg and Portsmouth bus receipts are to be included in the base of its franchise tax, then its receipts from its motor bus line between Richmond and Petersburg should likewise be included.

■ We disposed of this same argument in *Virginia Electric & Power Co.* v. *Commonwealth, supra* (169 Va., pp. 701, 702, 194 S. E., p. 780), by pointing out that the company "is not operating its interurban bus lines under any franchise, right or privilege granted it as a railway corporation," but that "It is conducting these bus lines under a 'certificate of public convenience and necessity' granted pursuant to the provisions of the motor vehicle law" (Acts 1932, ch. 359, p. 700), and is taxed accordingly in a separate classification made by the General Assembly.

■ This brings us to the next contention that the sections of the Tax Code under which the assessment is made are invalid in that they deny to the appellant the equal protection of the law guaranteed by the Fourteenth Amendment, U. S. C. A. Const.

Here the argument is that the Safety Motor Transit Corporation of Roanoke and the Citizens Rapid Transit Company of Newport News operate buses in these respective cities and yet are not subject to the same franchise tax required of this appellant.

The reply is that the tax of which the appellant corporation complains is a franchise tax upon its powers as an electric railway corporation, incident to which, as we have already seen, its buses are operated in Petersburg and in Portsmouth as well as in Richmond and Norfolk.

Neither of the other corporations mentioned has a franchise as an electric railway corporation. The Safety Motor Transit Corporation is a private corporation operating motor vehicle lines entirely within the city of Roanoke pursuant to a contractual arrangement with the street railway

company. The Citizens Rapid Transit Company is chartered as a motor vehicle carrier.

Furthermore, by reason of their particular classifications both the Safety Motor Transit Corporation and the Citizens Rapid Transit Company are subject to other State taxes from which the appellant corporation and others similarly situated to it are specifically exempt.

██ ██ It is well settled that the equal protection clause does not require mathematical exactness in taxation and that absolute equality can not be obtained. . *Richmond Linen Supply Co.* v. *City of Lynchburg*, 160 Va. 644, 169 S. E. 554 (affirmed, 291 U. S. 641, 54 S. Ct. 437, 78 L. Ed. 1039) ; *State Board of Tax Commissioners* v. *Jackson*, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536. "Nor is it necessary that the same transactions be themselves always subject to the same tax." *Richmond Linen Supply Co.* v. *City of Lynchburg, supra* (160 Va., at page 648, 169 S. E., at page 555).

██ "If the selection of classification is neither capricious nor arbitrary, and rests upon some reasonable consideration or difference or policy, there is no denial of the equal protection of the law." *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, 30 S. Ct. 578, 580, 54 L. Ed. 883.

And, as the Corporation Commission points out, "it has long been the tax policy of Virginia to tax railway corporations in one way, and other corporations in another."

See also, *Virginia Electric & Power Co.* v. *Commonwealth, supra* (169 Va., pp. 703 *ff.*, 194 S. E., pp. 780 *ff.*).

On the whole our conclusion is that the order of the Corporation Commission appealed from is right and accordingly it is

*Affirmed.*