**Peter N. APOSTOLOU, t/a Roanoke Sports Club, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 69–C–59–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Sept. 6, 1972.

Alexander N. Apostolou, Roanoke, Va., for plaintiff.

Leigh B. Hanes, Jr., U. S. Atty., Roanoke, Va., Helen E. Marmoll, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

WIDENER, Chief Judge.

This is an action for the recovery of federal excise taxes paid on admission tickets to wrestling matches during the last quarter of calendar year 1962, and for each of the four quarters of calendar years 1963, 1964, and 1965. Both parties have waived trial by jury and have submitted the case for decision upon a stipulation of facts, briefs, and oral argument.

The parties have stipulated that if the taxpayer prevails, he will be entitled to recover $2,811.83 in taxes and $32.72 in interest, plus statutory interest, and that the amount claimed to have been overpaid will be refunded to the purchasers of the tickets or that waivers will be secured from those purchasers relinquishing all right to any such refund.

This court has jurisdiction over the case under 28 U.S.C. § 1346(a).

Plaintiff, Peter N. Apostolou, trading as Roanoke Sports Club, was at all times here involved as producer and promoter of wrestling matches in Virginia. During all thirteen quarters, plaintiff was subject to the federal admissions tax and to an admissions tax levied by the Commonwealth of Virginia. The only issue before the court is the proper construction of these two statutes. Taxpayer contends that, although he did not do so, he was entitled to deduct the state tax from each ticket sold before computing the established price of each ticket upon which the federal admissions tax was paid.

The federal statute, 26 U.S.C. § 4231, as amended by § 131(a) of the excise tax Technical Changes Act of 1958, Pub.L.No. 85–859, 72 Stat. 1275, provides:

"There is hereby imposed:

(1) General.—

(A) Single admission.—A tax of 1 cent for each 10 cents or major fraction thereof of the amount in excess of $1 paid for admission to any place.

(B) Season ticket.—In the case of a season ticket or subscription for admission to any place, a tax of 1 cent for each 10 cents or major fraction thereof of the amount paid for such season ticket or subscription which is in excess of $1 multiplied by the number of admissions provided by such season ticket or subscription.

(C) By whom paid.—The taxes imposed under subparagraphs (A) and (B) shall be paid by the person paying for the admission." [1]

§ 9–29 of the Code of Virginia, which section the parties have agreed was at all times applicable, provides:

"Reports by Producers, Promoters, etc.: Taxes on Receipts; Proration of General Admission Charges.—For the purposes of this section, the following terms shall have the respective meanings herein defined:

"The term 'producer' shall mean every person, firm, corporation, club, association or organization who or which may hold or exercise any of the privileges conferred by this chapter and who or which undertakes to conduct any wrestling, sparring or boxing match, contest or exhibition in this State in his or its own name and upon his or its own behalf.

"The term 'promoter' shall mean every person, firm, corporation, club, association or organization who or which may hold or exercise any of the privileges conferred by this chapter and who or which, as an independent contractor but not promoter, undertakes the general promotion, supervision and conduct of any wrestling, sparring or boxing match, contest or exhibition in this State.

"Every producer shall, within twenty-four hours after the termination of every match, contest or exhibition, furnish to the Commission a written report, duly verified by the promoter or one of its officers, showing the number of tickets sold for such match, contest or exhibition, and the amount of gross proceeds thereof, and such other matters as the Commission may prescribe; and shall also within such time pay to the Commission a tax of five per centum of its total gross receipts from the sale of tickets of admission to, and rights to broadcast by

---

1. 26 U.S.C. § 4231 has been repealed. Act of June 21, 1965, Pub.L. No. 89–44, § 301, 79 Stat. 145. The effective date of repeal was noon, December 31, 1965. *Id.* § 701(b)(1)(A), 79 Stat. 156.

radio or television, such match, contest or exhibition.

"Every promoter . . . shall, within twenty-four hours of the termination of every match, contest or exhibition, furnish to the Commission a report, duly verified by such promoter . . . showing the amount of the gross fee, charge, commission or other consideration received or to be received by such promoter . . . and also showing such other matters as the Commission may prescribe; and shall also within such time pay to the Commission a tax of five per centum of such amount.

"Whenever any wrestling, sparring or boxing match, contest or exhibition is conducted as a part of, or in conjunction with, any exhibition, presentation or activity for the whole or which there is a general admission charge, the Commission shall determine what portion of such general admission charge, shall be subject to the tax imposed upon the producer by this section; and whenever the compensation of any promoter . . . for his or its services in connection with any wrestling, sparring or boxing match, contest or exhibition shall be combined with his or its compensation for other services, the Commission shall determine what portion of such total compensation shall be subject to the tax imposed by this section."

The record contains a copy of a $2.00 ticket and a copy of a $1.50 ticket sold by plaintiff. The $2.00 ticket shows the established price as $1.91 and the federal tax as 9 cents. The $1.50 ticket shows the established price as $1.45 and the federal tax as five cents.[2] No notation concerning the amount of the state tax or the method of its computation appears on the face of these tickets. Most of the tax reports submitted by plaintiff to the Virginia Athletic Commission show the base price for $2.00 tickets as $1.90 or $1.91, the base price for $1.50 tickets as $1.45, and the base price for $1.75 tickets as $1.68. A few of the reports show $1.39 as the base price for the $1.50 tickets and $1.83 as the base price for the $2.00 tickets. The tax paid to the Commonwealth of Virginia by plaintiff was 5 percent of his gross proceeds from the sale of tickets at each event less the federal excise taxes collected.

By statute, the burden of the federal tax and its payment was placed upon the customer. 26 U.S.C. § 4231(1)(C). Plaintiff contends that the state tax, as well, is a tax upon the customer. He argues that if he is not permitted to deduct the state tax from the price of each ticket before computing the base price upon which the federal tax is paid, the result is a tax upon a tax. To illustrate, the taxpayer claims that on a $2.00 ticket, for example, he paid 9 cents in federal tax, which was computed as shown on the $2.00 ticket in the record:

| | |
|---|---|
| Established price | $1.91 |
| Federal tax | .09 |
| Total | $2.00 |

Upon such a ticket, plaintiff contends he had to pay 9.55 cents in state tax. Under plaintiff's view of the proper con-

---

**2.** The court is aware that, completely disregarding the Virginia tax, it is impossible to sell to the public a ticket for $1.50 which includes a correctly computed federal admissions tax. For the time period here involved, the federal tax was one penny for each 10 cents or major fraction thereof of the amount paid for admission in excess of $1.00, not 10% of the price of admission in excess of $1.00. Thus, on an established price of $1.45, the tax would have been 4 cents, making the total cost of the ticket $1.49. On an established price of $1.46, the tax would have been 5 cents, making the total charge for admission $1.51. See Rev.Rul. 59–19, 1959–1 Cum. Bull. 363, which, because the admissions tax was repealed, was declared obsolete by Rev.Rul. 69–227, 1969–1 Cum.Bull. 315. However, the question of whether or not plaintiff is entitled to a refund on account of this is not before the court, as the parties have stipulated that the only issue to be litigated in this action is whether or not plaintiff was entitled to deduct the state tax prior to computing the federal tax. Furthermore, plaintiff has declined the opportunity to have the court set aside the stipulation and try the case on evidence presented to it concerning all issues.

struction of the two statutes he is entitled to deduct the state tax from the established price shown on the ticket, leaving an established price for the federal excise tax as $1.81 or $1.82, resulting in 8 cents, not 9 cents, federal excise tax.

Defendant, on the other hand, maintains that the tax levied by the Commonwealth of Virginia should not be deducted from the established price as shown on the ticket prior to computing the federal tax because it contends that the state tax is a tax on gross receipts. Under its view, the Virginia tax is a tax on the plaintiff, not a tax on plaintiff's customers as is the federal tax.

To support its position that the state tax is upon the patron, plaintiff points out that the state statute does not specifically prohibit "passing on" the tax to the customers. Assuming that plaintiff is correct, the statute's permissiveness is not decisive. As Mr. Justice Holmes stated in Lash's Products Co., v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L. Ed. 251 (1929), in referring to a tax on soft drinks, sold by the manufacturer:

> "The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. Heckman & Co. v. I. S. Dawes & Son Co. [56 U.S.App.D.C. 213,] 12 F.2d 154. The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all. Still the question as to the meaning of the statute remains." *Id.* at 176, 49 S.Ct. at 100.

Plaintiff also points out that the state statute does not purport to tax concessions, programs, or other receipts derived from the wrestling matches, other than the sale of tickets. To support his view of a gross receipts tax as an all-inclusive tax, taxpayer relies upon Virginia Electric & Power Co. v. Commonwealth, 174 Va. 316, 6 S.E.2d 680 (1940), and Peninsula Transit Corp. v. Commonwealth, 165 Va. 614, 183 S.E. 446 (1936). In Virginia Electric & Power Co., the Virginia Supreme Court held a statute imposing on a railway corporation a tax

upon "gross transportation receipts" was broad enough to include a railway corporation's receipts from its bus operations carried on in connection with its railway business. In *Peninsula Transit Corp.*, the Supreme Court of Virginia held that a transit company was not entitled to deduct amounts paid as tolls to bridges and ferry companies prior to computing a "gross transportation receipts" tax. These cases, rather than holding that a gross receipts tax necessarily must tax all of the taxpayer's receipts, merely require that the applicable statute be examined to determine the makeup of the gross receipts which are taxed. In this case, it is the gross receipts from admissions tickets. Additionally, the issue in Virginia Electric & Power Co. and Peninsula Transit Corp., was whether certain items were deductible from the base upon which a gross receipts tax was computed, and that case was not concerned with the issue here, whether a gross receipts tax is deductible prior to computing another tax not levied on gross receipts.

The court assumes, without deciding, that if the state tax were a tax upon the patron, the amounts attributable to that tax would not constitute a part of the "amount . . . paid for admission to any place" within the meaning of the federal statute, 26 U.S.C. § 4231(1)(A), and that the inclusion of the state tax in the established price of the ticket for purposes of federal taxation would result in a tax upon a tax. It is not necessary to decide if plaintiff is correct in those contentions, for the court is of opinion that the plain language of the Virginia statute places the burden of the tax and its payment upon the plaintiff and not upon the customer. The section provides:

> "*Every producer* shall . . . *pay* to the Commissioner a tax of five per centum of its total gross receipts from the sale of tickets of admission to . . . such match . . . "*Every promoter* . . . shall . . . *pay* to the Commission a tax of five per centum of such amount."

§ 9–29 Va.Code Ann. [Emphasis added]

This result is supported by Agron v. Illinois Bell Telephone Co., 449 F.2d 906 (7th Cir. 1971), where the court was faced with the question of whether state and local taxes on the gross receipts from the transmission of messages were deductible from a federal tax imposed on telephone subscribers. The Seventh Circuit held that language of the state and local statutes, similar to that here considered, clearly indicated that these taxes were imposed upon the telephone company, and that the company was, thus, not entitled to deduct them prior to computing the federal tax it collected from the subscribers.

In Leader v. Glander, 149 Ohio St. 1, 77 N.E.2d 69 (1948), the Supreme Court of Ohio was called upon to construe § 5544–2, General Code, 116 Ohio Laws, pt. 2, 353, which provided:

> "There is hereby levied . . . a tax of three percentum on the amounts received for admission to any place, including admission by season ticket or subscription."

§ 5544–5, General Code, 116 Ohio Laws, pt. 2, 354, provided that each person receiving admissions payments should make a return to the Tax Commission showing the number of taxable admissions. That section further provided:

> "Each person making such return shall at the time of making the same pay the amount of taxes shown thereby to the treasurer of state . . . ."

The court was not called upon to decide whether the state admissions tax was deductible from the federal tax, the question here. Rather, the question there was whether or not the promoter of boxing exhibitions was entitled to deduct from the state tax a city admissions tax, which imposed a tax upon gross receipts from admissions. However, in deciding that that city tax was not deductible, the court concluded that the Ohio state statute, which is not dissimilar to the Virginia statute, imposed a gross receipts tax to be paid by the person receiving the payment, not by the customer.

It should be noted that defendant relies upon Distinctive Theaters, Inc. v. Looker, 9 A.F.T.R.(2d) 2023 (S.D.Ohio, 1962). An alternative holding in that case was that the taxpayer was not entitled to deduct a city admissions tax from the established price of the tickets upon which the federal tax was paid. However, that case does not set out the city ordinance, does not state whether or not the city tax was levied upon theater operators or upon their customers, and does not state what proportion of the refund sought was attributable to the taxpayer's not deducting the city tax. Thus, while an examination of the record in that case, which is not available, may support the result reached here, the court does not place primary reliance upon it.

Defendant also relies upon Wilmette Park District v. Campbell, 338 U.S. 411, 70 S.Ct. 195, 94 L.Ed. 205 (1949), Huguenot Yacht Club v. United States, 32 F.Supp. 387 (S.D.N.Y.1940), and Chimney Rock Co. v. United States, 63 Ct.Cl. 660 (1927), cert. den. 275 U.S. 552, 48 S.Ct. 115, 72 L.Ed. 421 (1947). Although these cases, for the most part, deal with the issue of whether a charge, or a portion of a particular charge, is part of the admission for purposes of the federal statute, none of them deals with the question of whether a state or local tax is deductible from the price of the ticket before the federal tax is computed. The court does not place reliance upon them.

The court does not place any reliance upon the form in which the tickets were printed other than it is the best contemporaneous record of what actually transpired.

An order consistent with this opinion dismissing the complaint is this day entered.